In re INDUSTRIAL SUPPLY CORPORATION, Debtor.

Robert L. STOBER, Liquidating Trustee, Plaintiff,

v.

FLORIDA STEEL CORPORATION, Defendant.

Bankruptcy No. 87–6438–8P1.
Adv. No. 89–163.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Jan. 3, 1990.

See also, Bkrtcy., 108 B.R. 799.

Robert L. Stober, Clifton, N.J., for plaintiff.

Ronald Bergwerk, Jacksonville, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

This is a confirmed Chapter 11 liquidating case and the matter under consideration is a Complaint filed by the Trustee, Robert L. Stober (Plaintiff) which seeks a determination that payments totalling $227,599.35 made by the Debtor to Florida Steel Corporation (Defendant) within ninety (90) days prior to the filing of the bankruptcy Petition should be avoided as a preferential transfer pursuant to § 547 of the Bankruptcy Code. The parties have stipulated that all of the elements of a preference have been met, therefore, the sole issues to be determined by this Court will be limited to those raised by the Defendant's first and second affirmative defenses under Sections 547(c)(2) and 547(c)(4) of the Bankruptcy Code, respectively. The following undisputed facts are relevant and germane to the matter under consideration.

At the time relevant, the debtor was a wholesale distributor of industrial hardware, steel and steel products and the Defendant was the Debtor's major steel supplier. The relationship between the Debtor and the Defendant was based on an open account with stated invoice payment terms of net 30 days. During the first month of the relationship, the Debtor generally paid the Defendant for supplies within the thirty days of receiving the invoice. Thereafter, the interval between invoice and payment rapidly lengthened. By January 1987, the average interval between shipment and payment had risen to 90 days. The Defendant began an effort to reduce the delay and an average interval was gradually brought back into the 50 to 60 day range. There was no specific credit limit, but at numerous times during the relationship the Defendant refused to deliver new goods until the overall level of debt was reduced. When this happened, the Debtor hand delivered checks to the Defendant so that an order of steel could be released for shipment. During the 90 days prior to the filing of the Petition, the eigh-

# 486

teen payments were received by the Defendant from the Debtor (Pl. Exh. No. 3). The following chart shows the payments received:

| Check No. | Date Rec'd by Defendant | Check Amount | Date of Inv. Pd. | Amt of Inv. Pd. | # Days Pmt. Late |
|---|---|---|---|---|---|
| 18565 | 8/27/87 | $ 5,725.11 | 6/17/87 | $5,725.11 | 41 |
| 18447 | 8/25/87 | 6,659.46 | 6/11/87 | 6,659.46 | 45 |
| 18455 | 8/26/87 | 6,174.63 | 6/18/87 | 6,174.63 | 39 |
| 18460 | 8/27/87 | 6,234.55 | 6/18/87 | 6,234.55 | 40 |
| 18539 | 8/28/87 | 6,645.29 | 6/18/87 | 6,645.29 | 41 |
| 18545 | 9/01/87 | 6,402.31 | 6/18/87 | 5,402.31 | 45 |
| 18558 | 8/31/87 | 5,854.03 | 6/18/87 | 5,854.03 | 44 |
| 18716 | 9/05/87 | 21,064.15 | 6/30/87 | 7,118.97 | 37 |
| | | | 6/30/87 | 7,015.19 | 37 |
| | | | 6/30/87 | 6,929.99 | 37 |
| 18857 | 9/11/87 | 3,702.24 | 7/20/87 | 3,702.24 | 23 |
| 18891 | 9/21/87 | 14,189.23 | 6/30/87 | 6,942.30 | 53 |
| | | | 6/30/87 | 7,246.93 | 53 |
| 18908 | 9/24/87 | 14,137.63 | 7/02/87 | 7,161.72 | 54 |
| | | | 7/02/87 | 6,975.91 | 54 |
| 18934 | 9/28/87 | 7,262.67 | 7/02/87 | 7,262.67 | 58 |
| 19220 | 10/01/87 | 18,460.36 | 8/09/87 | 6,101.69 | 53 |
| | | | 8/09/87 | 6,180.27 | 53 |
| | | | 8/09/87 | 6,178.40 | 53 |
| 19235 | 10/02/87 | 18,140.32 | 8/05/87 | 6,006.42 | 28 |
| | | | 7/30/87 | 6,066.95 | 34 |
| | | | 7/30/87 | 6,066.95 | 34 |
| 19240 | 10/05/87 | 19,647.17 | 7/20/87 | 7,515.76 | 47 |
| | | | 7/20/87 | 5,955.94 | 47 |
| | | | 8/05/87 | 6,175.47 | 31 |
| 19241 | 10/06/87 | 21,668.27 | 7/02/87 | 7,570.22 | 66 |
| | | | 7/16/87 | 7,868.42 | 52 |
| | | | 7/20/87 | 6,229.63 | 48 |
| 19629 | 10/20/87 | 75,382.71 | 8/26/87 | 7,208.66 | 25 |
| | | | 8/26/87 | 7,030.83 | 25 |
| | | | 8/26/87 | 7,142.91 | 25 |
| | | | 7/20/87 | 5,307.61 | 62 |
| | | | 7/20/87 | 4,936.24 | 62 |
| | | | 7/20/87 | 1,234.12 | 62 |
| | | | 9/01/87 | 6,650.42 | 19 |
| | | | 9/01/87 | 6,130.60 | 19 |
| | | | 9/03/87 | 6,360.82 | 17 |
| | | | 9/03/87 | 6,184.80 | 17 |
| | | | 9/04/87 | 5,458.41 | 16 |
| | | | 9/04/87 | 6,275.43 | 16 |
| | | | 9/08/87 | 5,461.86 | 12 |
| 19769 | 10/30/87 | 13,944.60 | 8/04/87 | 7,088.80 | 57 |
| | | | 10/02/87 | 6,855.80 | 0 |

A short time prior to the commencement of the Chapter 11 case, the Debtor made payments totalling approximately $82,400.00 while receiving only one-half that amount, approximately $43,000.00 new steel delivered. The Debtor made a payment to the Defendant on October 20, 1987, 35 days prior to the commencement of the Chapter 11 case, in the amount of $75,382.71 for 13 invoices which were beyond the stated invoice terms of net 30 days.

| Date Pmt. Rec'd. or New Value Extended | Amt. of Prefer. Pmt. | Amt. of New Value | Net Preference |
|---|---|---|---|
| 8/25/87 | $ 6,659.46 | | $ 6,659.46 |
| 8/26/87 | 6,174.63 | | 12,834.02 |
| 8/26/87 | | $21,382.40 | 0.00 |
| 8/27/87 | 5,725.11 | | 5,725.11 |
| 8/27/87 | 6,234.55 | | 11,959.66 |
| 8/28/87 | 6,645.29 | | 18,604.95 |
| 8/31/87 | 5,854.03 | | 24,458.98 |
| 9/01/87 | 6,402.31 | | 30,861.29 |
| 9/01/87 | | 12,781.02 | 18,080.27 |
| 9/03/87 | | 12,545.62 | 5,534.65 |
| 9/04/87 | | 11,733.84 | 0.00 |
| 9/05/87 | 21,064.15 | | 21,064.15 |
| 9/08/87 | | 5,461.86 | 15,602.29 |
| 9/11/87 | 3,702.24 | | 19,304.53 |
| 9/21/87 | 14,189.23 | | 33,493.76 |
| 9/24/87 | 14,137.63 | | 47,631.39 |
| 9/28/87 | 7,262.67 | | 54,894.06 |
| 10/01/87 | 18,460.36 | | 73,354.42 |
| 10/02/87 | 18,140.32 | | 91,494.74 |
| 10/02/87 | | 5,728.80 | 85,765.94 |
| 10/02/87 | | 6,221.34 | 79,544.60 |
| 10/05/87 | 19,647.17 | | 99,191.77 |
| 10/06/87 | 21,668.27 | | 120,860.04 |
| 10/06/87 | | 5,974.03 | 114,886.01 |
| 10/06/87 | | 6,647.40 | 108,238.61 |
| 10/07/87 | | 7,539.77 | 100,698.84 |
| 10/07/87 | | 6,683.91 | 94,014.93 |
| 10/07/87 | | 6,201.52 | 87,813.41 |
| 10/07/87 | | 7,118.85 | 80,694.56 |
| 10/07/87 | | 5,799.80 | 74,894.76 |
| 10/07/87 | | 7,196.39 | 67,698.37 |
| 10/07/87 | | 6,969.45 | 60,728.92 |
| 10/07/87 | | 7,152.05 | 53,576.87 |
| 10/12/87 | | 6,102.18 | 47,474.69 |
| 10/12/87 | | 6,362.28 | 41,112.41 |
| 10/13/87 | | 6,275.45 | 34,836.96 |
| 10/13/87 | | 6,991.03 | 27,845.93 |
| 10/13/87 | | 7,397.45 | 20,448.48 |
| 10/13/87 | | 7,141.48 | 13,307.00 |
| 10/14/87 | | 6,502.03 | 6,804.97 |
| 10/14/87 | | 7,620.73 | 0.00 |
| 10/14/87 | | 7,298.65 | 0.00 |
| 10/20/87 | 75,382.71 | | 75,382.71 |
| 10/20/87 | | 6,604.10 | 68,778.61 |
| 10/23/87 | | 6,291.88 | 62,486.73 |
| 10/23/87 | | 6,206.56 | 56,280.17 |
| 10/23/87 | | 6,468.83 | 49,811.34 |
| 10/26/87 | | 6,510.74 | 43,300.60 |
| 10/28/87 | | 6,652.23 | 36,648.37 |
| 10/29/87 | | 6,455.95 | 30,192.42 |
| 10/30/87 | 7,088.80 | | 37,281.22 |

Basically these are the undisputed facts which are relevant to the matter under consideration.

The Defendant has asserted as an affirmative defense, the ordinary course of

business exception of § 547(c)(2). Specifically, the payments to which application of the exception is sought are on 11 invoices paid within the historical payments interval, totalling $67,606.98. The second affirmative defense raised by the Defendant, that the Defendant gave new value to the Debtor, which new value was not secured by a security interest and on account of which the Debtor did not make any other transfer, pursuant to § 547(c)(4) of the Bankruptcy Code.

Section 547(g) of the Bankruptcy Code provides that the Defendant has the burden of proving the nonavoidability of a payment under Section 547(c). The Plaintiff has stipulated that the payments do fall within subsection (c)(2)(A) in that they were made in payment of debts incurred by the Debtor in the ordinary course of business or financial affairs of the Debtor and, therefore, the Defendant has the burden of proving that the payments made by the Debtor meet the requirements of subsections (c)(2)(B), (c)(2)(C) which provides:

### § 547. Preferences

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms; ....

The Defendant contends that the payments he received from the Debtor during the preference period were characteristic of the relationship between the Debtor and the Defendant over an extended period of time and were made pursuant to an agreed upon established course of dealings between the parties. The Eleventh Circuit, in *In re Craig Oil Co. (Marathon Oil Company v. Flatau)*, 785 F.2d 1563 (11th Cir. 1986) cites the congressional intent with respect to the ordinary course of business as

... to leave undisturbed normal financial relations, because [such an exception] does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditor during the debtor's slide into bankruptcy. H.R.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 6329.

The Court then states its opinion derived from the foregoing Congressional objective that

... [Section] 547(c)(2) should protect those payments which do not result from "unusual" debt collection or payment practices. To the extent an otherwise "normal" payment occurs in response to such practices, it is without the scope of [Section] 547(c)(2). Thus, whenever the bankruptcy court receives evidence of unusual collection efforts, it must consider whether the debtor's payment was in fact a response to those efforts. *Id.*

Here, as in Craig, payments during the preference period were made beyond the stated invoice terms, as well as beyond the average number of days late for transactions during the parties dealings prior to the preference period. The stated terms were net 30 days. Payments during the period from January 1, 1987, to August 25, 1987, averaged approximately 29.3 days beyond the terms (Pl.Exs. 3 and 4). Payments made during the preference period were made by the Debtor on an average of 40 days beyond such terms. It is undisputed that the Defendant refused to deliver new orders of material until payment was made on old outstanding invoices.

The appropriate test to be used in analyzing the ordinary course of business exception to § 547 is known as the vertical dimension test and is outlined in *In re Johns–Manville Corp. (Committee of Asbestos–Related Litigants v. Johns–Manville Corp.)*, 60 B.R. 612 (Bkrtcy.S.D.N.Y. 1986) which held that the primary focus of the vertical dimension is ... on the debtor's internal operation and workings. Basically, this test requires an analysis of the Debtor's transactions with a particular

creditor and whether the circumstances of those transactions have undergone any changes. *In re Websco, Inc.*, 92 B.R. 1 (Bkrtcy.D.Me.1988) The Court in *Websco* refers to *In re First Software Corp.*, 81 B.R. 211 (Bkrtcy.D.Mass.1988) and the factors to be considered by a Court in determining whether payments are protected under Section 547(c)(2). They are (1) the prior course of dealing between the parties; (2) the amount of the payments; (3) the timing of the payments; and (4) the circumstances surrounding the payments. *In re White*, 58 B.R. 266 (Bkrtcy.E.D.Tenn.1986).

Based on the foregoing, this Court is satisfied that the payment interval during the preference period is not so different from the period of time prior to the preference period to bring these payments outside of the ordinary course of business. However, it is the fact that the payments were made as a result of extraordinary collection efforts which does so. Both parties agree that during the preference period, the Defendant refused to deliver new merchandise to the Debtor on several occasions unless the Debtor hand-delivered checks and reduced the level of debt owed to the Defendant. It is because of these efforts and not the payment interval time that bring these transactions during the preference period outside the protection of § 547(c)(2) of the Bankruptcy Code.

The Defendant's second affirmative defense is based on Section 547(c)(4) which was intended to codify the former net result rule established under the Bankruptcy Act.

(c) the trustee may not avoid under this section a transfer ...

(4) to or for the benefit of a creditor to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

The Sixth Circuit in *In re Fulghum Construction Corp.*, 706 F.2d 171 (1983) reject-ed the judicially created net result rule in favor of the subsequent advance rule. Prior to *Fulghum*, courts would take the aggregate amount of payments by the debtor to the supplier which exceeded the aggregate amount of value received and the estate was credited accordingly. *Fulghum* expressly rejected this procedure and this Court agrees that the better view is that the trustee may avoid the transfer only if the creditor provides additional value after the transfer from the debtor to the creditor.

Based on the foregoing, this Court is satisfied that the Defendant is entitled to some protection under § 547(c)(4) and after applying the "new value" to the preferential payments, that the Plaintiff should recover $37,281.22 as a preferential payment.

A separate Final Judgment shall be entered in accordance with the foregoing.