In the Matter of WINTER HAVEN TRUSS COMPANY, Debtor.

Larry HYMAN, Trustee, Plaintiff,

v.

STONE LUMBER COMPANY, Defendant.

Bankruptcy No. 90–11009–8B7.
Adv. No. 92–204.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 15, 1993.

Dennis J. LeVine, Tampa, FL, for plaintiff.

John J. Lamoureux, Tampa, FL, for defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND FOR JUDGMENT ON ADVERSARY COMPLAINT

PAUL B. LINDSEY, Bankruptcy Judge.

### BACKGROUND

Debtor's bankruptcy case was commenced on November 6, 1990, by the filing of a voluntary petition under Chapter 11 of the Bankruptcy Code.[1]  The case was con-

---

1.  References herein by section number only will be to the provisions of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, unless the context requires otherwise.

verted to a case under Chapter 7 by order dated May 9, 1991. This adversary proceeding, which seeks to avoid certain transfers made by Debtor to Defendant on or within 90 days before the filing of the petition,[2] was filed by the Chapter 7 trustee on March 11, 1992.

Motions for summary judgment were filed by both Plaintiff and Defendant. The case was thereafter set for final evidentiary hearing before this Court. At the hearing, the parties first argued their respective motions for summary judgment. At the conclusion of the arguments, the Court determined to take the issue of summary judgment under advisement and to take evidence on ·the controverted issues of Debtor's insolvency at the time of the various transfers, the business relationship between the parties prior to and during the "preference period," and the kind and extent of efforts made by Defendant during that period to collect past due invoices.

The Court heard testimony from Randal T. Kenny, the former Chief Executive Officer of Debtor, and from Michael J. O'Malley, the Chief Executive Officer of Defendant. At the conclusion of the hearing, the Court took the issues raised under advisement.

## THE INSOLVENCY ISSUE

■ The Court must first determine whether Debtor was insolvent at the time of the transfers in question, since insolvency at the time a transfer is made is a necessary prerequisite to the trustee's ability to avoid such a transfer as preferential under § 547(b)(3).[3] Only if the issue of

2. The appropriate period, according to this Court's computation, would encompass pre-petition payments made on or after August 8, 1990.

3. Defendant has conceded that the remaining requirements of § 547(b) have been met, with the possible exception of § 547(b)(5), which requires a determination that the creditor received more than it would have received if the case were a Chapter 7 liquidation case under the Bankruptcy Code. It seems to have been conceded that if Debtor is found to have been insolvent at the time of the transfers, an unsecured creditor would have, by definition, received more through the transfer than it could receive upon a contemporaneous liquidation.

insolvency is resolved in favor of Plaintiff must the competing motions for summary judgment filed by Plaintiff and Defendant be dealt with.

It is first noted that § 547(f) creates a rebuttable presumption of Debtor's insolvency "on and during the 90 days immediately preceding the date of the filing of the petition." [4] The record contains evidence which, without more, could be construed as casting doubt upon the insolvency of Debtor during the 90–day pre-petition preference period. Such evidence could be viewed as being sufficient to prevent the Court from relying solely upon the statutory presumption of insolvency. It is not, however, necessary to resolve that issue. The Court took further evidence on that issue at the hearing. Having heard and examined all of the evidence offered and admitted, having reviewed the record and being fully advised in the premises, this Court is of the opinion that the insolvency of Debtor during the 90 days immediately preceding November 6, 1990, the date of the filing of Debtor's bankruptcy petition, has been clearly established, and the Court so finds and holds.

## THE DEFENSES—GENERAL

Resolution of the remaining issues requires the Court to examine two of the statutory defenses to actions seeking to avoid alleged preferential transfers under § 547, specifically those provided by §§ 547(c)(2) and (c)(4), commonly referred to as the "ordinary course" and the "new value" exceptions, respectively.[5]

4. At the hearing, Defendant asserted that certain deposition testimony in the file was sufficient to rebut the presumption and to require denial of Plaintiff's motion for summary judgment on the issue of Debtor's insolvency. Inasmuch as the Court thereafter heard testimony on the issue of insolvency, Defendant's objection to Plaintiff's reliance upon the presumption is rendered moot.

5. Sections 547(c)(2) and (c)(4) are as follows:
(c) The trustee may not avoid under this section a transfer—
  \*     \*     \*     \*     \*     \*
  (2) to the extent that such transfer was—
    (A) in payment of a debt incurred by the debtor in the ordinary course of business or

It is noted that applicability of the statutory defense contained in § 547(c)(1), commonly referred to as the "contemporaneous exchange" exception, was asserted in Defendant's answer. No reference to that defense, however, is found in Defendant's motion for summary judgment, and counsel for Defendant conceded in open Court that reliance upon that defense had been abandoned.

## THE ORDINARY COURSE DEFENSE [6]

Plaintiff urges first that payments made outside contract terms, *i.e.*, late payments, can never satisfy the ordinary course of business exception. For this proposition, Plaintiff cites *Marathon Oil Co. v. Flatau (In re Craig Oil Co.)*, 785 F.2d 1563 (11th Cir.1986). In that case, however, the court merely said that "[l]ateness is particularly relevant in determining whether payments should be protected by the ordinary course of business exception," and that "untimely payments are more likely to be considered outside the ordinary course of business and avoidable as preferences." *Craig Oil Co.*, 785 F.2d at 1567–1568. The court also noted that Congress originally required payment to be made within forty-five days, a period which "represents a normal trade cycle." *Craig Oil Co.*, 785 F.2d at 1567 n. 8.

In *Jerry–Sue Fashions, Inc. v. LT Assocs. (In re Jerry–Sue Fashions, Inc.)*, 91 B.R. 1006, 1008 (Bankr.S.D.Fla.1988), decided subsequent to *Craig Oil Co.*, the court made the following statement:

> In determining whether a transferee has established the requirements of the pref-

erence exception for a payment of a debt incurred by the debtor in the ordinary course of business, the Court·will consider the parties['] prior course of dealing, the amount of the payment, the timing of the payment, and the circumstances surrounding the payment. *Newton v. Ed's Supply Co., Inc. (In re White)* 58 B.R. 266 (Bankr.E.D.Tenn.1986).

In this case, Defendant has stipulated that any payment received by it more than 15 days beyond invoice terms should not be considered made in the ordinary course of business. Virtually all of Defendant's invoices to Debtor called for payment "net 30 days." Thus, Defendant has admitted that payments received by it outside of what the *Craig Oil Co.* court referred to as "a normal trade cycle," 45 days from invoice date, are not entitled to the ordinary course of business exception. By necessary implication, Defendant is contending that payments received within the same 45–day period are entitled to that exception.

Plaintiff also contends that Debtor's payments during the 90–day preference period should be denied the ordinary course of business exception because they resulted from "unusual" or "extraordinary" collection efforts by Defendant (*see Craig Oil Co.*, 785 F.2d at 1563; *Stober v. Florida Steel Corp. (In re Industrial Supply Corp.)*, 109 B.R. 484 (Bankr.M.D.Fla.1990), *aff'd*, 127 B.R. 62 (M.D.Fla.1991), *aff'd*, 961 F.2d 1582 (11th Cir.1992); *Caplan v. Peterson Eng'g Co. (In re Century Brass*

financial affairs of the debtor and the transferee;
> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
> (C) made according to ordinary business terms;

> \* \* \* \* \* \*

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
> (A) not secured by an otherwise unavoidable security interest; and
> (B) on account of which new value the debtor did not make an otherwise unavoid-

able transfer to or for the benefit of such creditor;

\* \* \* \* \* \*

**6.** Certain charts are attached as exhibits to the affidavit of Michael J. O'Malley, filed in support of Defendant's motion for summary judgment. References in this discussion to those charts, or to certain dates and amounts of payments, to invoice dates, to the number of days such payments were outside the terms specified in the invoices, and to certain related facts as contained in such charts, are based upon those charts, the accuracy of which counsel for Plaintiff has advised will not be controverted.

*Prods., Inc.),* 121 B.R. 136 (Bankr.D.Conn. 1990)).[7]

■ The record before this Court does not establish that such collection efforts as Defendant employed were either unusual or extraordinary. The relationship between Debtor and Defendant did not change in any significant particular during the preference period. The only activity which could arguably support Plaintiff's contention was Defendant's enforcement of its previously set credit limit, by requiring payment in order to reduce the balance owed below the credit limit before additional goods would be shipped. The evidence supports a determination that, although the level of the credit limit was revised from time to time during the business relationship of the parties, it was similarly enforced at all times. The evidence does not support a finding of any unusual or extraordinary collection efforts by Defendant, at any time. Thus, it is this Court's opinion that Debtor's payments to Defendant within the preference period were not made as a result of either unusual or extraordinary collection efforts on the part of Defendant.

■ A comparison of Debtor's payments to Defendant, during the 90–day preference period and during a period of approximately 105 days prior thereto, as shown in uncontroverted charts submitted as Exhibits 3 and 6 to the affidavit of Michael J. O'Malley, reveals the following:

| DESCRIPTION | NON-PREFERENCE | | PREFERENCE * |
| --- | --- | --- | --- |
| Number of Payments Made | 11 | | 6 |
| Average Payment Amount | $13,227.43 | | $11,307.36 |
| Number of Invoices Paid | 29 | | 18 |
| Average Invoice Amount | $ 5,017.30 | ** | $ 3,769.12 |
| Average Number of Days Beyond Invoice Terms | 7.7 | *** | 11.4 |

*—Excludes one payment, in the amount of $11,803.74, and the three invoices paid therewith, which were included in the chart as having been paid during the preference period. Payment date was August 6, 1990, two days before the beginning of the preference period. The one payment and three invoices have been included in the non-preference column.

**—Includes one invoice, and payment thereon, in excess of $20,000. The next largest invoice during either period totalled less than $9,000.

***—Includes all 29 invoices, nine of which were paid in accordance with invoice terms. Two of the invoices were payable net 11 days, rather than net 30 days. These two were paid 18 and 31 days beyond invoice terms.

This Court has examined each of the factors set out in *Jerry–Sue Fashions,* 91 B.R. at 1006, and *White,* 58 B.R. at 266, the authorities submitted by the parties, the arguments of counsel and the record herein. In all the circumstances, it is the opinion of this Court that all payments by Debtor to Defendant during the preference period which were made no more than 15 days outside invoice terms, qualify for the ordinary course of business exception found in § 547(c)(2).

Of all the invoices paid by Debtor to Defendant during the preference period,

7. In *Craig Oil Co.,* payment by cashier's check was required even after debtor had ceased doing business with the creditor. In *Industrial Supply Corp.,* the debtor was required to hand-deliver checks for past-due invoices. In *Century Brass Prods.,* it was held that the ordinary course of business exception does not tolerate "dunning" calls. It is noted that the average payment in that case was made 134 days after the invoice date.

only five, totalling $18,445.17, were paid more than 15 days outside invoice terms: Three invoices totalling $11,881.98, paid September 4, 1990; one invoice for $804.17, paid September 19, 1990; and one invoice for $5,759.02, paid October 12, 1990. The Court must now address whether or to what extent these three payments qualify for the "new value" exception contained in § 547(c)(4).

## THE NEW VALUE DEFENSE

■ It should first be noted that Plaintiff concedes that Defendant is entitled to *some* new value credit. Relying on *Charisma Inv. Co. v. Airport Sys., Inc. (In re Jet Florida Sys., Inc.),* 841 F.2d 1082 (11th Cir.1988), Plaintiff contends that Defendant's new value credit should be limited to $14,675.95, the amount of Defendant's last shipments to Debtor, made after Debtor's last payment. In espousing this position, Plaintiff asserts that *Jet Florida* stands for the proposition that new value credit is available only for amounts which remain unpaid. This Court does not agree.

While the *Jet Florida* opinion recites that the non-payment of a subsequent advance is a necessary prerequisite to new value credit, that statement is quoted from a case out of another jurisdiction, and is not necessary to the decision of the court in *Jet Florida.* Thus, the statement is purely *dictum. Jet Florida* stands for no more than the proposition that a lessor's forbearing to terminate a lease after default did not constitute the giving of new value under § 547(c)(4). Even that proposition may be too broad, since it is clear from the opinion that the debtor in that case did not continue to use the leased premises, and that the result might well have been different had the debtor not abandoned the premises. *Jet Florida,* 841 F.2d at 1084.

In *Industrial Supply Corp.,* 109 B.R. at 484, the court addressed the new value exception. The court cited *Waldschmidt v. Ranier (In re Fulghum Constr. Corp.),* 706 F.2d 171 (6th Cir.), *cert. denied,* 464 U.S. 935, 104 S.Ct. 342, 78 L.Ed.2d 310 (1983), as having rejected "the judicially created net result rule in favor of the sub-

sequent advance rule." *Industrial Supply Corp.,* 109 B.R. at 489. The court then stated that it agreed "that the better view is that the trustee may avoid the transfer only if the creditor provides additional value after the transfer from the debtor to the creditor." *Industrial Supply Corp.,* 109 B.R. at 489. This Court agrees.

■ In this case, Exhibit 9 to the affidavit of Michael J. O'Malley shows that, subsequent to Debtor's payments of $11,881.98 on September 4, 1990, and $804.17 on September 19, 1990, which have been heretofore found not to qualify for the ordinary course of business exception, Defendant shipped goods valued at $5,021.85 on September 12, 1990; $4,611.30 on each of September 17 and September 19, 1990; $5,134.23 on September 24, 1990; $5,638.12 on September 26, 1990; $1,200.85 on September 28, 1990; and $4,955.64 on October 1, 1990. The total of these shipments, $31,173.29, far exceeds the amount of the payments denied exception from avoidance and recovery under § 547(c)(2).

Subsequent to Debtor's last payment, on October 12, 1990, which included $5,759.02 heretofore found not to qualify for the § 547(c)(2) exception, Defendant shipped, on October 25 and 26 and November 1, 1990, goods valued in the aggregate at $14,675.95. Again, these shipments, made subsequent to payments which would otherwise be subject to avoidance and recovery as preferential payments, are far in excess of those payments. As is noted above, Plaintiff concedes that Debtor should be given credit for the value of those shipments under § 547(c)(4).

Defendant is therefore entitled to credit, under § 547(c)(4), for the entire amount of the transfers from Debtor which have heretofore been held to not qualify for the ordinary course of business exception contained in § 547(c)(2).

## CONCLUSION

Based upon the foregoing, Defendant is entitled to credit for all payments made to it by Debtor during the 90–day pre-petition preference period, under either § 547(c)(2) or § 547(c)(4). That being the case, Defen-

dant is entitled to the entry of final judgment against Plaintiff, and Plaintiff shall take nothing by reason of his complaint. The motions for summary judgment filed herein by Plaintiff and Defendant are denied, having been rendered moot by the Court's decision herein.

IT IS SO ORDERED.