In the Matter of BROWN TRANSPORT TRUCKLOAD, INC., Brown Transport Co., Inc., Brown Transport Corp., BTR Realty, Inc., Service Contractors, Inc., Wilkes Equipment Co., Inc., and Thurston Motor Lines, Inc., Debtors.

Frank W. SCROGGINS, Chapter 7 Trustee for Brown Transport Corp., Plaintiff,

v.

BP EXPLORATION & OIL, INC., Defendant.

Bankruptcy Nos. A89–12515–WHD Through A89–12521–WHD. Adv. No. 92–6934A.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Dec. 1, 1993.

D. Scott Silvis, Lamberth, Bonapfel, Cifelli, Willson & Stokes, P.A., Atlanta, GA, for plaintiff.

J. William Boone, Matthew W. Levin, Alston & Bird, Atlanta, GA, for defendant.

## MEMORANDUM OF OPINION AND ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Plaintiff–Trustee filed the above-styled adversary complaint to Avoid and Recover Preferential Transfers. It is before the Court today on both Plaintiff–Trustee's and Defendant's respective Motions for Summary Judgment. This is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(F).

## FINDINGS OF FACT

Prior to Debtor's filing for bankruptcy protection, Debtor and Defendant had a business relationship whereby Defendant supplied Debtor with fuel for its trucks. During the course of their relationship, Debtor was allowed to purchase fuel on credit up to a certain preset credit limit, which was periodically reviewed and adjusted. On September 5, 1988, Debtor's credit limit was reviewed and raised from $300,000.00 to $400,000.00. Following that, on October 19, 1988, Debtor's credit limit with Defendant was reviewed and lowered to $250,000.00, and remained at that level through reviews on December 1, 1988, and May 31, 1989. On June 29, 1989, Debtor's credit limit with Defendant was reviewed and lowered to $100,000.00. This level was maintained from that date throughout the ninety (90) day preference period which commenced on August 2, 1989.

The relationship between Debtor and Defendant was such that a representative of Debtor would contact Defendant and place an order for the loads of fuel that Debtor wished to purchase. Defendant would then check availability under the credit line, and if Debtor had sufficient credit remaining within

its limits, Defendant would release the loads of fuel as requested. If Debtor did not have enough credit remaining, Debtor was then free to choose to pay down the outstanding invoices and then purchase the fuel on credit. Generally, Debtor chose to send a check by overnight mail to Defendant in order to pay off older invoices. However, Debtor eventually chose to begin payment of outstanding invoices via wire transfers.

On October 31, 1989, Debtor filed a voluntary petition under chapter 11 of the United States Bankruptcy Code. On January 8, 1990, this Court entered an Order converting Debtor's case to one under chapter 7. Plaintiff was appointed as interim trustee on January 8, 1990.[1] A meeting of creditors was held on January 10, 1990. On October 2, 1990, Plaintiff–Trustee filed a motion asking the Court to set a date for the first meeting of creditors in the chapter 7 case. An Order setting that meeting for November 16, 1990 was entered by this Court on October 4, 1990. During the nine month period between Plaintiff–Trustee's appointment as interim trustee and the October 2, 1990 motion, Plaintiff–Trustee never requested this Court or the U.S. Trustee to set a date for the § 341 meeting in the chapter 7 case. On November 16, 1990, the first meeting of creditors in the chapter 7 case was held, at which time Plaintiff–Trustee became the permanent chapter 7 trustee.

Defendant has raised several affirmative defenses to the instant action. First, Defendant contends the Plaintiff–Trustee's complaint is barred either by the applicable statute of limitations or by the equitable defense of laches. Further, Defendant argues the transfers in question are protected from the avoidance and recovery powers of Plaintiff–Trustee pursuant to the ordinary course of business exception of § 547(c)(2). Next, Defendant contends that most of the transfers in question are protected from avoidance pursuant to the new value exception set forth in § 547(c)(4). Lastly, it is Defendant's position that most of the transfers in question are protected from avoidance pursuant to the contemporaneous exchange exception of § 547(c)(1).

## ANALYSIS

In accordance with Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56, this Court will grant a motion for summary judgment only when there is no material issue of fact to be tried and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When deciding a motion for summary judgment, the Court must view the facts in a light most favorable to the party opposing the motion. *Rosen v. Biscayne Yacht & Country Club, Inc.,* 766 F.2d 482, 484 (11th Cir.1985); *United States v. Oakley,* 744 F.2d 1553, 1555 (11th Cir. 1984). The burden of proof in a motion for summary judgment is on the moving party. *Clark v. Union Mut. Life Ins. Co.,* 692 F.2d 1370 (11th Cir.1982); *United States Steel Corp. v. Darby,* 516 F.2d 961, 963 (5th Cir. 1975).

Summary judgment is appropriate where the pleadings, deposition, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Bankr.P. 7056; Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

### A. *Laches and Applicable Statutes of Limitation*

Section 546(a)(1) of the Bankruptcy Code provides that a trustee has two years from the date of installation as permanent trustee under § 702 to bring an avoidance action pursuant to § 547(b). That being true, the timing of the appointment of a permanent

---

1. Actually, Robert E. Brizendine was appointed to the position of Trustee at this time. On November 3, 1993, however, Brizendine became an honorable member of the United States Bankruptcy Court for the Northern District of Georgia, and Frank W. Scroggins has assumed the position of Trustee.

trustee, for purposes of determining the running of the § 546(a)(1) limitation is vital to the determination of timing issues.

In the case *sub judice*, Plaintiff–Trustee was named interim trustee on January 8, 1990. Section 341 requires the first meeting of creditors to be held within a "reasonable time" after the order for relief is granted. Pursuant to subsection (a), the United States Trustee is responsible for convening this meeting. Federal Rule of Bankruptcy Procedure [2] 2003(a) provides that a § 341 meeting of creditors shall be convened not less than twenty (20), nor more than forty (40) days after an order for relief has been entered in the case.[3] According to FRBP 9006(b)(2), the Court may not enlarge the time for taking action under FRBP 2003(a).

Here, the order for relief in the chapter 7 case was entered on January 9, 1990. Accordingly, Defendant argues that the § 341 meeting should have been convened no later than February 18, 1990 (40 days after January 9, 1990). However, it was not until October 2, 1990, Defendant notes, nearly seven months after the outside date provided for in FRBP 2003(a) for holding the § 341 meeting, that Plaintiff–Trustee even requested the Court to set a date for such meeting. Because of this delay, Defendant contends, the § 341 meeting was not held until November 16, 1990. Therefore, it was only at that point that Plaintiff–Trustee became permanent trustee, and the time limitations of § 546(a)(1) began to run.

Defendant argues that Plaintiff–Trustee has committed laches in delaying so long to request the § 341 meeting, and as such should not be allowed to profit from his delay. Condensed, Defendant argues that had Plaintiff–Trustee obeyed the time limitations set in the FRBP, he would have been named permanent trustee much earlier, and the instant complaint would have been filed after the two year limitation provided for in § 546(a)(1).

■ This argument, while it may appear to be valid at first glance, must fail when scrutinized more closely. Section 341 specifically requires that the initial creditors' meeting be held within a "reasonable time." However, FRBP 2003(a) only requires a meeting of creditors to be held within its specific time frame. The Bankruptcy Code is a federal statute, while the FRBP are only rules established by the Bankruptcy Rules Committee. When there is an apparent conflict between the two, the federal statute must prevail. In this case, there is such a conflict. That being true, this Court will abide by the "reasonable time" provision of § 341.

■ This Court finds that the approximate seven month period between when the order for relief was granted and when Plaintiff–Trustee requested the § 341 meeting to be held was a "reasonable time" within the meaning of § 341. This is a highly complex interstate transport carrier bankruptcy. As such, this court will give the benefit of the doubt to Plaintiff–Trustee that the time taken was "reasonable" to come to understand all the issues involved in such a case. Accordingly, Defendant's Motion for Summary Judgment as to the failure of Plaintiff–Trustee to timely bring the instant complaint against Defendant is denied.

B. *Elements of an Avoidable Preferential Transfer*

A trustee is permitted to avoid and recover preferential transfers pursuant to § 547(b) of the United States Bankruptcy Code.[4] In

**2.** Herein, all Federal Rules of Bankruptcy Procedure shall be referred to as "FRBP."

**3.** An exception is provided which allows the § 341 meeting to be held up to sixty (60) days after the date of entry of the order for relief under certain circumstances. However, it is apparent that sixty days is the outside limit for holding a section 341 meeting. In the case *sub judice*, there is no evidence that any of those special circumstances requiring a sixty (60) day period is required.

**4.** Section 547(b) provides as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of debtor in property—(1) to or for the benefit of a creditor; (2) for or on account of antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made—

(A) on or within 90 days before the date of the filing of the petition; or ...

support of his motion for summary judgment, Plaintiff–Trustee has submitted his own personal affidavit. This affidavit establishes that the transfers in question were made to Defendant by Debtor within ninety (90) days of Debtor filing for bankruptcy. These transfers total $1,102,525.00. Plaintiff–Trustee's affidavit further establishes that the subject transfers were made on account of antecedent debts owed by Debtor to Defendant. Since this is the case, the first, second and fourth elements of a preference have been proven. With respect to the third element, Debtor is presumed to be insolvent on or during the ninety (90) days immediately preceding the date of the filing of the petition. 11 U.S.C. § 547(f). Defendant has offered no evidence to rebut this presumption.

▆ The final element of an avoidable preference is that the transfer allows a creditor to receive more than such creditor would receive if the estate were liquidated under chapter 7 of the Bankruptcy Code. In making this determination, it is only necessary for this Court to determine that the creditor will receive, if paid to the extent allowed by the Bankruptcy Code, less than one hundred per cent of its claim. This Court takes judicial notice of Debtor's bankruptcy case as a whole, including the schedule of assets and liabilities, proofs of claim, and applications for administrative expenses in determining this final requirement. *In re All American of Ashburn, Inc.*, 65 B.R. 303 (Bankr.N.D.Ga. 1986).

As noted above, in support of his motion, Plaintiff–Trustee has submitted his own personal affidavit. According to this affidavit, it is Plaintiff–Trustee's informed belief that the unsecured creditors will not receive a one hundred per cent payment in this case. Furthermore, the schedule of assets and liabilities in the instant proceeding reveals that claims against the estate exceed the estate's assets, and that the creditors will not receive a one hundred per cent distribution on their unsecured claims. Therefore, each and ev-

ery element of a preference exists. Were the inquiry to end at this point, Plaintiff–Trustee would be entitled to summary judgment in his favor. However, justice requires that the Court's analysis continue.

C. *Defendant's Affirmative Defenses to Plaintiff–Trustee's Avoidable Preference Claim*

After the moving party satisfies its burden, the non-moving party then has the burden of going forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Bankr.P. 7056; Fed.R.Civ.P. 56(e). Defendant contends all of the transfers in question are protected from avoidance and recovery under the ordinary course of business exception to § 547(b). The ordinary course of business exception states that a trustee may not avoid a preferential transfer to the extent that such transfer was:

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2). Plaintiff–Trustee does not dispute that the transfers in question satisfy § 547(c)(2)(A).

▆ Pursuant to subsection (B), Defendant must establish the transfers in question were made in the ordinary course of business or financial affairs of the Debtor and Defendant. 11 U.S.C. § 547(c)(2)(B). Courts generally compare the parties' pre-preference period course of conduct with the parties' course of conduct during the preference period. *Marathon Oil Co. v. Flatau (In re Craig Oil Co.)*, 785 F.2d 1563 (11th Cir.1986). Restated, the issue is whether the transfers in question were made in a similar manner to transfers made prior to the preference period. The factor to focus upon is whether the payment(s) were made in response to unusu-

(5) that enables such creditor to receive more than such creditor would receive if—
  (A) the case were a case under Chapter 7 of this title [11 U.S.C. §§ 701 et seq.];

(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title [11 U.S.C. §§ 101 et seq.].

al debt collection or payment practices. *Id.* at 1566. In order to fully comprehend this, this Court will consider the prior course of dealings between Debtor and Defendant and compare those practices to the course of dealings those parties had during the preference period. *Id.* at 1566–67.

■ Plaintiff–Trustee argues that the parties' pre-preference transactions differ significantly from those during the preference period so as to take the relationship between Defendant and Debtor out of the ordinary course of business exception of § 547(c)(2)(B). In support of this, Plaintiff–Trustee refers to the line of credit between Defendant and Debtor. Prior to the preference period, Defendant allowed Debtor a $400,000.00 line of credit. Plaintiff–Trustee correctly notes that shortly before the preference period, in June 1989, the line of credit was reduced to $100,000.00. However, this Court does not agree with Plaintiff–Trustee's assessment of the facts. Debtor had an adjustable credit limit set by Defendant, and Debtor could order fuel products from Defendant so long as Debtor did not exceed that credit limit. As noted in the findings of fact above, between September 5, 1988 and June 29, 1989, Debtor's credit limit was adjusted numerous times, both increasing and decreasing. Therefore, the Court finds this conduct to be within the ordinary course of business.

■ Further, Plaintiff–Trustee argues that the ordinary course of business exception does not apply because once Debtor's line of credit was reduced, Debtor began making payments by wire transfer instead of by corporate check as the parties had done in the past. Although *Craig Oil* allows the Court to consider changes in form of payment as evidence, this argument holds little merit. *Craig Oil* at 1566–67. To require creditors to accept payment only in one particular method is not sound business. There is no evidence that Defendant required Debtor to pay in this form. Simple changes in the amount of credit that a creditor is willing to extend to a debtor, and changes in method of payment by a debtor to a creditor are not enough to make the business relationship not ordinary. More drastic changes must be effected before payments are considered not to be ordinary. *See Hyman v. Stone Lumber Co. (In re Winter Haven Truss Co.),* 154 B.R. 592, 595 (Bankr.M.D.Fla.1993). Accordingly, the Court finds that the mere fact the Defendant paid by wire transfer does not take this conduct outside the ordinary course of business.

In addition, Plaintiff–Trustee notes that Defendant had constant contact with Debtor regarding its financial condition, as well as the status of payments on the accounts. According to Plaintiff–Trustee, these actions resulted in Debtor making payments much more timely to Defendant than had been done in the past. As a result, Plaintiff–Trustee contends that Debtor's payments during the preference period should be denied the ordinary course of business exception because they resulted from unusual or extraordinary collection efforts by Defendant. *See Craig Oil, supra; Stober v. Florida Steel Corp. (In re Industrial Supply Corp.),* 109 B.R. 484 (Bankr.M.D.Fla.1990), *aff'd,* 127 B.R. 62 (M.D.Fla.1991), *aff'd,* 961 F.2d 1582 (11th Cir.1992).

The record before the Court does not establish that such collection efforts were employed by Defendant. The relationship between Debtor and defendant did not change as to any significant characteristic during the preference period. The only activity which arguably could support Plaintiff–Trustee's contention were the changes in credit limit and payment form. The evidence supports a determination that, although the level of the credit limit was revised from time to time during the business relationship of the parties, it was similarly enforced at all times. The evidence does not support a finding of any unusual or extraordinary collection efforts by Defendant at any time. Consequently, it is the finding of this Court that Debtor's payments to Defendant within the preference period were not made as a result of either unusual or extraordinary collection efforts on the part of Defendant.

Lastly, Defendant must establish that the payments in question were in accordance with the ordinary terms of the industry. 11 U.S.C. § 547(c)(2)(C). *See, e.g. Willson v. MLA, Inc. (In re Ascot Mortgage, Inc.),* 153

B.R. 1002, 1022 (Bankr.N.D.Ga.1993); *Brizendine v. Barrett Oil (In re Brown Transport Truckload, Inc.)*, 152 B.R. 690 (Bankr. N.D.Ga.1992). In support of its position, Defendant has offered the affidavit of Robert K. Coleman, a former member of the American Petroleum Credit Association with thirty-four (34) years of experience in both the credit and sales and oil and gas sales industries. In his affidavit, Mr. Coleman states that in the entire relationship between Defendant and Debtor, as well as the payments made pursuant thereto, was completely within the industry standard. The Plaintiff-Trustee has offered no evidence to the contrary, so this Court finds that Defendant has met his burden with respect to § 547(c)(2)(C).

In summary, in this Court's view, the transfers in question constitute preferences within the meaning of § 547(b). However, the Court also finds that those same transfers are excepted from avoidance pursuant to § 547(c)(2). Because of the fact that this ruling is in Defendant's favor, it is unnecessary at this time to rule on the other issues presented for consideration.

### ORDER

In accordance with the reasoning above, **IT IS THE ORDER OF THIS COURT**, that Plaintiff–Trustee's Motion for Summary Judgment be, and same hereby is, **DENIED.**

**IT IS THE FURTHER ORDER OF THE COURT** that Defendant's Motion for Summary Judgment be, and the same hereby also is, **GRANTED.** This Court holds that all transfers sought to be avoided in Plaintiff-trustee's complaint are protected from avoidance pursuant to the ordinary course of business exception.

The clerk is **directed** to serve a copy of this order on the attorney for the Plaintiff–Trustee, the Plaintiff–Trustee, the attorney for Defendant, and the Defendant.

**IT IS SO ORDERED.**

### *JUDGMENT*

Judgment is hereby entered for the Defendant against the Plaintiff in the above-styled adversary proceeding in accordance with the Order of the Court entered the 30th day of November, 1993.