In re Joseph D. CARINI, Debtor.

Todd C. Esser, Trustee, Plaintiff,

v.

First Federal Financial Services, Inc., Defendant.

Bankruptcy No. 96–27570–JES.
Adversary No. 98–2386.

United States Bankruptcy Court,
E.D. Wisconsin.

Jan. 18, 2000.

Robert K. Steuer, Milwaukee, WI.

Jonathan H. Dudley, Milwaukee, WI.

## DECISION

JAMES E. SHAPIRO, Chief Judge.

### *PRELIMINARY*

The plaintiff seeks recovery of $6,000 as preferential transfers made by Joseph Carini ("Carini" or "debtor") to the defen-

dant as payment of a debt arising out of two equipment lease agreements.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

At the trial, testimony was presented and exhibits were received into evidence. The parties also had submitted a joint pretrial report which contained a statement of uncontested facts as well as a statement of contested facts. At the conclusion of the trial, the court took this matter under advisement.

### FACTS

On September 15, 1996, an involuntary petition in bankruptcy was filed against Carini. On March 27, 1997, Carini stipulated to an adjudication under chapter 11. On July 7, 1997, upon motion of Carini, this case was converted to a case under chapter 7, and Todd C. Esser was appointed trustee in bankruptcy.

The defendant is in the business of equipment leasing and financing. It leased to Carini certain of its equipment which Carini used in his apartment rental business which he operated under the name of J.D. Carini Apartments. On January 27, 1993, Carini entered into a lease with the defendant of a Bobcat skid and trailer ("Bobcat lease") Lease No. 12026. This lease provided for 36 monthly payments of $478.88 plus sales tax of $23.94 for a total of $502.82 per month. On February 14, 1994, Carini entered into a second lease with the defendant of a John Deere wheel loader ("John Deere lease") Lease No. 12368. This lease provided for 36 monthly payments of $1,054 plus sales tax of $57.97 for a total of $1,111.97. Because Carini did not carry insurance, the monthly payments on each of these leases were increased by additional sums as an insurance surcharge. Under the Bobcat lease, the additional monthly surcharge was $51.10, which increased the monthly lease payment to $553.92. Under the John Deere lease, the additional monthly surcharge was $87.50, which increased the monthly lease payment to $1,199.47.

Payments on both leases were due on or before the first day of each month. The defendant would send monthly invoices consistent with the terms of the leases to Carini approximately 15 days before the due date specifying the amount to be paid. Each lease also provided that time is of the essence and that the lessee shall pay a delinquency charge of 15% of the amount due if not paid within 15 days of the due date.

Prior to December of 1995, the monthly lease payments were remitted on a timely basis. However, starting in December of 1995, the monthly lease payments were not remitted timely. Carini did pay the December, 1995 payment in accordance with the amount set forth on the invoice, but that amount also was not remitted timely. Thereafter, starting in January of 1996, all payments were made late by Carini and in amounts not in accordance with the monthly invoices. Instead, Carini would always pay in multiples of $1,000.

The $6,000 being sought by the trustee as preferences arose out of four (4) payments made within 90 days of the involuntary petition, as follows:

| | |
|---|---|
| July 19, 1996 | $1,000 |
| July 26, 1996 | $1,000 |
| August 20, 1996 | $2,000 |
| August 30, 1996 | $2,000 |
| **TOTAL** | **$6,000** |

### LAW

Under 11 U.S.C. § 547(b), the following elements must be established in order to result in a preference:

1. A transfer of an interest of the debtor in property,

2. To or for the benefit of a creditor,

3. For or on account of an antecedent debt,

4. Made while the debtor was insolvent,

5. On or within 90 days before bankruptcy, and

6. That enables a creditor to receive more than it would receive in a chapter 7 case if the transfer had not been made. *Collier on Bankruptcy* (15th Ed. Rev.) § 547.01. The burden of proof to establish these elements rests with the plaintiff by a preponderance of the evidence.

Upon plaintiff's motion for summary judgment, this court ruled on April 21, 1999 that the third element—"for or on account of an antecedent debt"—was established as a matter of law. The only element under § 547(b) which is in dispute is the final element—"that the transfer enabled the creditor to receive more than it would receive in a chapter 7 case if the transfer had not been made."

The defendant argues that the plaintiff failed to establish that the transfer enabled the defendant to receive more than it would otherwise have received in this case had the transfer not been made. This court is satisfied that the plaintiff has established this element through the testimony of the Trustee Esser, who, by constructing a hypothetical liquidation in this case, established that the defendant received more than other creditors in the same class as the defendant. The trustee testified that he is currently holding $15,700, that there are priority claims totaling approximately $100,000 and unsecured creditors' claims totaling in excess of $14,000,000. The defendant has filed a proof of claim in excess of $110,000, which it filed as an unsecured claim. (Presumably, this proof of claim was based upon damages for the unpaid lease payments and for the loss of the defendant's leased equipment.) Douglas Braunreiter, president of the defendant, in his testimony was unable to substantiate the basis for this proof of claim because it was filed by his father, Dennis Braunreiter as chairman of the defendant. Trustee Esser testified that he anticipated that the unsecured creditors will receive no dividend in this case. As such, the defendant, by having received $6,000 during the preference period, received more than the other creditors in its class and this court also concludes that the defendant's claim was that of a general unsecured creditor.

■ The defendant maintains that its claim does not fit into the class of unsecured claimants and, using counsel for the defendant's words, this claim is "in between secured and unsecured." There is no such thing as an "in between secured and unsecured" claim. It is important to determine whether the defendant's claim is secured or unsecured. If a claim is fully secured, then payments which such secured claimant received during the preference period are not preferential because a preference only involve payments to unsecured claimants or undersecured claimants. *See In re P.A. Bergner Holding Co.*, 187 B.R. 964, 976–77 (Bankr.E.D.Wis. 1995); *In re Telesphere Communications, Inc.*, 229 B.R. 173 (Bankr.N.D.Ill.1999); and *Collier on Bankruptcy* § 547.03(7). It is well established that payments to a fully secured claimant, in contrast to payments to an unsecured or undersecured claimant, are not preferences. *In re Summit Financial Services, Inc.*, 240 B.R. 105, 115 (Bankr.N.D.Ga.1999).

■ This court concludes that the defendant's claim is an unsecured claim. Defendant was an equipment lessor, not the holder of a secured claim. The agreements between the parties are true leases and not security agreements. The nature of a transaction between the parties is determined upon the facts and circumstances of each case. Wis. Stats. 401.201(37)(a) defines a security interest as "an interest in personal property ... that secures payment or performance of an obligation." That is not the case here.

■ The two agreements between Carini and the defendant are replete with such terms as "equipment lease," "lease," "lessor," "lessee," and "leased equipment." While labels are not necessarily determinative of the underlying agreement, they certainly are important factors to be considered.

Moreover, there was no option to purchase contained in these agreements. Had there been such an option to purchase, this may have been one factor which could have been used by the defendant to argue that the lease agreements were in reality disguised security agreements. But the lack of such option takes the starch out of this argument.

Paragraph 11 of the two lease agreements declares that title to the equipment at all times remained in the lessor. Paragraph 14 stated that, upon the termination of the agreement or upon default, the equipment shall be returned to the lessor at lessee's cost. These are clear indications that the agreement in question is a true lease.

■ The defendant further argues that the payments which the defendant received in the preference period cannot be a preference because the defendant in a separate adversary proceeding (Adversary No. 97–2327) obtained a nondischargeable judgment against Carini. The court does not accept this argument. Adversary No. 97–2327 and Adversary No. 98–2386 involve two entirely separate matters and neither impacts upon the other. Nothing in Adversary No. 98–2386 in any way impacts upon Adversary No. 97–2327. The two adversaries involve different parties and different issues. Adversary No. 97–2327 was a nondischargeability suit brought by the defendant against Carini, which ultimately resulted in a settlement. Adversary No. 98–2386—which is the instant adversary—is a preferential suit brought by the chapter 7 trustee, Esser, against the defendant.

All of the necessary elements for a preference including the one challenged element—that the creditor received more than it would received in a chapter 7 case had the transfer not been made—have been met.

■ Even though the court has concluded that all of the elements for a preference have been satisfied, there are exceptions to the preference as contained in § 547(c). If the defendant is able to prove any of these exceptions, then the defendant becomes insulated from the trustee's attack on the basis of preferential transfers. The burden of proof to establish exceptions to the preferential transfer rests upon the defendant by a preponderance of the evidence. *See* 11 U.S.C. § 547(g). *See also, Matter of Midway Airlines, Inc.,* 69 F.3d 792, 797 (7th Cir.1995). In this case, the defendant relies upon two exceptions to preference:

1. Section 547(c)(2) (payment of debt in the ordinary court of business) and

2. Section 547(c)(4) (subsequent new value).

Each exception will now be analyzed separately.

### *Ordinary Course of Business Exception— § 547(c)(2)*

Under this exception, the defendant must prove:

1. The debt was incurred in the ordinary course of business dealings between Carini and the defendant,

2. The payment was made in the ordinary course of their dealings, and

3. The payment was also made according to the ordinary business terms of the defendant.

All three elements must be established. *See In re Milwaukee Cheese Wisconsin, Inc.,* 191 B.R. 397, 400 (Bankr.E.D.Wis. 1995).

■ It is the second element—namely, the lack of showing of a payment made in the ordinary course of the business dealings between Carini and the defendant—which the defendant has failed to establish. The term "ordinary course of business" is not defined in the Bankruptcy Code. Ordinary course of business dealings between the parties requires consideration by the court of the *entire* prior course of dealings between the parties, the timing and amounts of the payments, and whether said payments resulted from pressures or unusual activities by the creditor. Prior to

December of 1995, the lease payments under both leases between the parties were made on a timely basis and in accordance with the monthly amounts set forth in the lease agreements and in the monthly invoices received by Carini. Starting in December of 1995, all payments made by Carini were made late, and starting in January of 1996, the payments by Carini were made in amounts which differed from the amounts specified on the monthly invoices.

■■■ The payments made, during the preference period were not typical of the entire business dealings between these parties and particularly of the business dealings before December of 1995. The payments during the preference period were made by Carini involuntarily and only in response to pressures placed upon him by the defendant, including repeated telephone calls and threats by the defendant that if the payments were not received, the account would then be referred to defendant's attorneys for collection. Unusual collection efforts, different from the normal dealings of the parties, can include repeated telephone calls. *See In re Schwinn Bicycle Co.*, 205 B.R. 557, 572 (Bankr.N.D.Ill.1997). In the case at bar, the record shows that in July of 1996, 32 phone calls were made by the defendant to Carini, which included both actual contacts and attempted contacts. In August of 1996, 31 telephone calls were made by the defendant, also including both actual and attempted contacts. Whether the calls resulted in actual contacts or were simply attempted contacts is not important. When Carini was informed of these telephone calls from the defendant, it does not take a rocket scientist to conclude that he knew what these calls were about. Payments resulting from economic pressures are not in the ordinary course of business. *See In re Pan Trading Corp.*, 125 B.R. 869, 877 (Bankr.S.D.N.Y.1991); *In re Mid–South Cabinet and Millwork, Inc.*, 125 B.R. 16, 18–19 (Bankr.E.D.Ark.1990); *In re Industrial Supply Corp.*, 109 B.R.

484, 489 (Bankr.M.D.Fla.1990). This pattern of dunning telephone calls by the defendant to Carini was not typical of the overall pattern of dealings between these parties. This pattern was not "business as usual" between these parties. Whenever a bankruptcy court receives evidence of aggressive collection efforts, it must consider whether the debtor's payments were in fact a response to those efforts. This court finds that was the case here. While such conduct on the part of the defendant may well have been customary in its industry when payments became delinquent, it was not typical of the normal business dealings between Carini and the defendant.

The following excerpts from the Contact History between Carini and the defendant, maintained by the defendant and received as Exhibit 5 in this case, show that these payments which Carini made were as a result of the pressures being placed upon him:

July 5, 1996—"Joe (Carini) is frustrated and said he considered filing chapter 13 and f—— everyone."

July 29, 1996—Carini said, "He could just file personal bankruptcy. He was upset about being pushed."

July 31, 1996—Carini stated, "He would file personal (bankruptcy) if we kept up the pressure."

August 13, 1996—defendant informed Carini that they were in the process of turning this account over to its attorney if no payment was received.

The court concludes that the payments made by Carini to defendant during the preference period were sporadic and late and, when compared to the lease payments made over the entire period of the two leases, were not reflective of the ordinary course of their dealings. These payments made during in the preference period were made only after aggressive collection measures by the defendant. This was not the ordinary course of business dealings between the defendant and Carini.

■ The defendant's contention that the comparison of the payment practices between the parties during the preference period should be limited to a period starting in January of 1996 is rejected. The Seventh Circuit Court of Appeals in *Matter of Tolona Pizza Products Corp.*, 3 F.3d 1029, 1032 (7th Cir.1993), stated:

> [T]he most important thing is not that the dealings between the debtor and the allegedly favored creditor conform to some industry norm but that they conform to the norm established by the debtor and the creditor in the period before, *preferably well before*, the preference period. (emphasis added)

### Transfer for Subsequent New Value Exception— *§ 547(c)(4)*

■ The defendant has also asserted that the subsequent new value exception under § 547(c)(4) applies. Defendant contends that Carini had the continued use of the leased equipment after the preferential transfers were made and that this provides the defendant with a defense to this preference action.

The elements under § 547(c)(4) are as follows:

1. The creditor must give unsecured new value ("new value" is defined in § 547(c)(2) as "money or monies worth in goods, services or new credit"),
2. The new value must be given after the preferential transfer, and
3. The new value must not have been made by an otherwise unavoidable transfer. (This means that the new value must have remained unpaid or, if paid, such payment is otherwise avoidable by the trustee by some other means.)

The lack of sufficient proof of evidence on the first element—the giving of unsecured new value—prevents this exception from applying in this case.

Whether Carini had the continued use of this leased equipment under both leases after the preferential transfers is a key question of fact and, in this case, remains a mystery. What is known is that at some point in time the leased equipment under the two leases disappeared. Precisely when and how the equipment disappeared was never explained. The Contact History (Exhibit 5) states that on August 29, 1996 Carini in a telephone call with the defendant declared that he was "surprised" to learn that the equipment was missing and that he would work on trying to locate it. Douglas Braunreiter testified that, until the latter part of August of 1996, no one from his company ever inspected the equipment. It was not until then that it was first learned by the defendant that the equipment was missing. Mr. Braunreiter testified that his company "took Carini's word for it that the equipment would be where he said it would be."

Whether Carini had the actual use of the equipment after the preference payments were made by him or whether he was in a position to explain what happened to this equipment and why it was missing are all speculative because Carini was not called to testify. It was the defendant's burden to prove that the leased equipment was being used by Carini following the preferential payments, and the defendant has failed to do so.

Because of the failure by the defendant to establish the first element under § 547(c)(4), it is unnecessary to address the remaining two elements under § 547(c)(4).

### CONCLUSION

The plaintiff has proven, by a preponderance of the evidence, all of the elements of a preference in connection with the transfers totaling $6,000 from the debtor, Joseph Carini, to the defendant, First Federal Financial Services, Inc., pursuant to § 547(b). None of the exceptions to preferential transfers under § 547(c) were established by the defendant.

■ The plaintiff is entitled to recovery from the defendant of $6,000 together

with $436.20 costs (consisting of $150 adversary filing fee and $286.20 deposition costs). The plaintiff is also entitled to pre-judgment interest (*see Matter of P.A. Bergner & Co.*, 140 F.3d 1111, 1123 (7th Cir.1998)) of $654.11, computed annually, using the average of the prime rate of interest of Bank of America from September 18, 1998 (date of filing of adversary complaint). The plaintiff is also entitled to post-judgment interest pursuant to 28 U.S.C. § 1961.

This decision shall constitute the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.