**Eric W. FORMAN, Appellee/Cross–Appellant,**

v.

**KOREAN AIR LINES CO., LTD., Appellant/Cross–Appellee.**

Nos. 95–5230, 95–5231.

United States Court of Appeals, District of Columbia Circuit.

Argued April 12, 1996.

Decided May 21, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied July 5, 1996.*

---

* Circuit Judge Henderson did not participate in the order on Rehearing In Banc.

Andrew J. Harakas, White Plains, N.Y., argued the cause, and filed the briefs, for appellant/cross-appellee Korean Air Lines Co., Ltd. George N. Tompkins, Jr., White Plains, N.Y., entered an appearance.

Juanita M. Madole, Irvine, CA, argued the cause, and filed the briefs, for appellee/cross-appellant Eric W. Forman. George E. Farrell, Washington, DC, entered an appearance.

Before SILBERMAN, WILLIAMS, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Korean Air Lines and Eric Forman both appeal aspects of the judgment entered by the district court after trial on damages arising out of the downing of KAL Flight KE007. We reject KAL's claims that the evidence did not support the jury's award for Evelyn Forman's pre-death pain and suffering and that the district court erred in awarding prejudgment interest at the prime rate. Forman concedes that the Supreme Court's decision in *Zicherman v. Korean Air Lines,* —— U.S. ——, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996), precludes the recovery of loss of society damages in a case brought under the Warsaw Convention, so we reverse the judgment below as to those damages. And, we reverse the district court's determination that Forman offered insufficient evidence as to Evelyn's future earnings and contributions to him, and remand with instructions to reinstate the jury's verdict as to those damages.

## I.

Evelyn Forman was returning home to the Philippines, from where she had moved to New York seven years earlier, on KAL Flight 007, which was shot down by a Soviet fighter plane. All 269 persons on board were killed. Evelyn's husband, Eric, sued Korean Air Lines seeking damages for Evelyn's pre-death pain and suffering, for his own loss of her financial contributions and household services, and for the grief, mental anguish, and loss of society he suffered along with other members of Evelyn's family. The case was consolidated with all of the other federal cases arising out of the disaster for a single trial on liability in the United States District Court for the District of Columbia. A jury found against Korean Air Lines determining that the shoot-down resulted from KAL's "willful misconduct" so the Warsaw Convention's limitations on carrier liability were inapplicable. *See In re Korean Air Lines Disaster of September 1, 1983,* 932 F.2d 1475, 1478–79 (D.C.Cir.), *cert. denied sub nom. Dooley v. Korean Air Lines,* 502 U.S. 994, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991).

At the subsequent damages trial in this case, both sides presented evidence as to whether passengers survived the initial impact of the missile attack and were, thus, subject to pain and suffering before the plane crashed into the Sea of Japan. Forman offered evidence of the grief suffered by Evelyn's survivors, and also put on expert testimony estimating the amount of future fi-

nancial contributions he lost due to his wife's death. The jury awarded Eric Forman and Evelyn's other family members damages under each theory put forward at trial for a total of $1,277,300. Prejudgment interest, calculated at the prime rate, increased the judgment to $2,151,050. In response to post-trial motions by Korean Air Lines, the district court entered judgment as a matter of law striking the jury awards for grief and mental anguish (as nonrecoverable under the Warsaw Convention) and loss of Evelyn's financial contributions (as resting on insufficient evidence). The district court rejected KAL's challenges to the awards for pre-death pain and suffering and for Evelyn's family's loss of society. Both parties appeal portions of the district court's decision.

## II.

### Loss of Society/Mental Grief

 KAL appeals the district court's entry of judgment granting Evelyn Forman's survivors $290,000 for "loss of care, comfort, society, companionship, love and affection." Forman concedes that recovery of those damages is foreclosed by the Supreme Court's recent decision in *Zicherman*, which held that the limitation on recovery to pecuniary damages in the Death on the High Seas Act, 46 U.S.C.App. §§ 761–768 (1975) (DOHSA), obtained in a Warsaw Convention case arising out of an air crash on the high seas. Accordingly, we reverse the district court's entry of judgment on this claim. Forman did not challenge the district court's reversal of the jury's award of $195,000 for the mental anguish and grief of Evelyn's survivors until his reply brief. Forman asserted then that his first reading of *Zicherman*—decided some 10 days before his initial brief was due—had indicated that these damages, like loss of society damages, were no longer available under the Warsaw Convention. Further study, however, changed his mind. Ordinarily, we will not entertain arguments or claims raised for the first time in a reply brief. *See, e.g., LaRouche v. FEC*, 28 F.3d 137, 140 (D.C.Cir.1994); *McBride v. Merrell Dow Pharmaceuticals, Inc.*, 800 F.2d 1208, 1211 (D.C.Cir.1986) ("Considering an argument advanced for the first time in a reply brief ... is not only unfair to an appellee but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered.") (citations omitted). That Forman had 10 days to read the *Zicherman* opinion before he filed his opening brief hardly creates an exceptional circumstance allowing him to raise a new ground for appeal in his reply brief. We will thus not disturb the district court's ruling that damages for the survivors' mental grief are not recoverable.

### Pre-death Pain and Suffering

The jury awarded the estate of Evelyn Forman $120,000 for pain and suffering she endured between the time the missile struck the airplane and the time the airplane crashed. Korean Air Lines contends that Forman failed to proffer sufficient evidence to support this award and also that these non-pecuniary damages, as it explains for the first time in its reply brief, are barred by the DOHSA as interpreted in *Zicherman*. Korean Air Lines argues that it should be permitted to raise this argument because the briefing schedule (Forman brought a cross-appeal) permitted Forman in his reply brief to respond to KAL's reply brief argument. Nevertheless, since the exchange took place in reply briefs, we were denied the opportunity to receive the full briefing that the ticklish question KAL raises deserves. And that *Zicherman* was decided after KAL filed its opening brief does not justify its tardiness. The argument that pre-death pain and suffering damages are not available if DOHSA applies has been raised numerous times before *Zicherman*. *Compare, e.g., Azzopardi v. Ocean Drilling & Exploration Co.*, 742 F.2d 890, 893 (5th Cir.1984) (survival action permissible in DOHSA action), *with In re Air Disaster Near Honolulu, Hawaii*, 792 F.Supp. 1541, 1545–46 (N.D.Cal.1990) (DOHSA preempts survival action). *Zicherman* itself could not have surprised KAL: the counsel who argued this case before us argued *Zicherman* before the Supreme Court. Accordingly, we do not, as the Sixth Circuit recently has *Bickel v. Korean Air Lines*, 83 F.3d 127, 131–32 (6th Cir.1996), decide

whether pre-death pain and suffering damages may not be recovered after *Zicherman.*

■ As to the sufficiency of the evidence that Evelyn Forman survived the initial impact of the missile strike and was conscious for some or all of the time it took the plane to descend into the Sea of Japan, we agree with the Second Circuit, which has twice upheld awards for claims from the same incident. *See Hollie v. Korean Air Lines,* 60 F.3d 90, 92–93 (2d Cir.1995), *judgment vacated on other grounds and case remanded,* —— U.S. ——, 116 S.Ct. 808, 133 L.Ed.2d 754 (1996); *Zicherman v. Korean Air Lines,* 43 F.3d 18, 23 (2d Cir.1994), *rev'd in part on other grounds,* —— U.S. ——, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996).

The key factual dispute turns on whether the passengers were immediately rendered unconscious. Forman offered evidence that some occupants of the plane—the flight crew—survived the missile impact for at least 104 seconds. The flight data recorder continued to function for that amount of time and it captured the flight crew's post-impact actions and utterances. Forman's experts testified that the passengers could have remained conscious during the decompression that followed the puncturing of the fuselage, and that they would have had sufficient time to don their oxygen masks, which, in any event, would have been less and less necessary as the plane descended.[1] The experts testified that the descent would have taken between nine and twelve minutes and that the passengers would have suffered physical pain due to the decompression. And, according to stipulation of the parties, Evelyn's seat was a full 32 rows from the tail of the plane where the shrapnel appears to have hit. This body of evidence permits the inference that Evelyn Forman survived the missile impact, remained conscious despite the airplane's decompression, and experienced decompression-related pain.

KAL's evidence to the contrary was impressive. Its experts asserted that the plane disintegrated after 104 seconds and that, in any event, the airplane's cabin would have almost immediately equalized with the rarified ambient atmosphere, rendering all passengers unconscious—and thus anesthetized to pain—in a matter of seconds. We do not think, however, that the trial left the jury with but one conclusion to draw, *Parker v. District of Columbia,* 850 F.2d 708, 711 (D.C.Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1339, 103 L.Ed.2d 809 (1989), nor do we think that the pain and suffering award could only have resulted from jury speculation.

**Loss of Financial Contributions**

■ Although the jury awarded Forman a total of $392,300 for the loss of financial contributions from his wife, the district court granted judgment in favor of KAL. Forman relied on an expert who calculated Evelyn Forman's future earnings ($19,804 in 1983) based on the average earnings of a college-educated female of her age. The district judge thought that testimony was "speculation and conjecture" because Evelyn Forman's actual earnings in the United States never exceeded the $5,253 she made in 1983. The district court was also troubled by the lack of evidence as to what portion of Evelyn's future earnings would benefit Eric.

This is a close issue. The district judge would have been on firm ground but for the undisputed testimony of her husband that Evelyn had only recently received a green card and that prior to that point she had been inhibited from seeking a high-paying job. To be sure, she did not earn a great deal even in the months between getting her green card and taking the ill-fated flight. But her husband testified that she had not actively sought other employment then, knowing that she was soon to travel back to the Philippines for a two-week visit. Although it may seem farfetched, the jury

---

1. Forman's airplane expert testified that the holes in the fuselage would have caused the cabin's atmosphere, which was initially equivalent to an altitude of 4,800 feet, rapidly to approach the ambient altitude of between 35,000 and 38,000 feet. Since the airplane's ventilation system was continuously forcing air into the cab-

in, the expert stated that the interior atmosphere would not have equalized with the ambient altitude, but would have reached only the equivalent of roughly 22,000 feet. Forman's physiologist testified that at that altitude, the passengers would have been conscious for five to ten minutes even without the oxygen masks.

could have credited that testimony. We note that the tax returns indicating Evelyn's prior, meager earnings were presented to the jury and used by KAL in cross-examining plaintiff's expert and in assailing his conclusions during closing argument. The jury was thus presented with, and legitimately—if barely legitimately—rejected, evidence suggesting that plaintiff's expert's estimates were unreasonable.[2]

Since the expert concluded, and the jury reasonably could have agreed, that Evelyn's earnings history was of limited predictive value, this case is akin to those in which courts have allowed loss of future earnings damages for decedents with little or no earnings history. *See, e.g., Reilly v. United States,* 863 F.2d 149, 166–167 (1st Cir.1988); *see also In re Air Crash Near Cerritos, California,* 982 F.2d 1271, 1278–79 (9th Cir. 1992); *Caron v. United States,* 548 F.2d 366, 370 (1st Cir.1976). Nor do we think that *Joy v. Bell Helicopter Textron, Inc.,* 999 F.2d 549, 567–70 (D.C.Cir.1993), on which the district court and Korean Air Lines rely, requires a different result. In *Joy,* we reversed a jury verdict based on expert testimony painting an improbably rosy picture of the decedent's future earning capacity based on assumptions about decedent's possible career moves that were "wholly speculative" in light of his work history. Since Evelyn's pre-green card work history could be legitimately disregarded in predicting her future earnings, we think that Forman's expert's reliance on data concerning the average woman of Evelyn's age and education was permissible.[3]

Finally, we are satisfied that sufficient evidence supported the proposition that the Formans' was a share-and-share-alike household such that the jury could reasonably find that whatever portion of Evelyn's earnings remained after taxes and after her personal consumption would redound to Eric's benefit.

**2.** That does not mean that we will never disturb a judgment based on expert testimony. *See Joy v. Bell Helicopter Textron, Inc.,* 999 F.2d 549, 569 (D.C.Cir.1993) ("[I]n view of the patent flaws in [plaintiff's expert's] testimony, we must resist the temptation to answer objections to receipt of *expert testimony with the shorthand remark that the jury will give it 'the weight it deserves.'* ") (quotations omitted). Where the conclusions have an adequate foundation in fact, concerns

## Prejudgment Interest

Korean Air Lines objects to the district court's award of prejudgment interest at the prime rate for each year between the accident and the entry of judgment. KAL contends that the purpose of prejudgment interest is to compensate—but not overcompensate—the plaintiff. Since the prime rate—the rate charged by banks on short-term, unsecured loans to their most creditworthy customers—not only consists of the financial community's guess as to future inflation rates, but also includes a profit component and an allowance for the risk of default, it is argued to be too high, resulting in a windfall for Forman. KAL prefers the 52–week Treasury Bill rate, which is said to represent the financial community's guess as to the appropriate return on a risk-free loan.

■ KAL concedes that the decision on how to compute prejudgment interest is discretionary with the district court. We quite agree with many of our sister circuits that the use of the prime rate for determining prejudgment interest is well within the district court's discretion. *See, e.g., Cement Division, Nat'l Gypsum Co. v. City of Milwaukee,* 31 F.3d 581, 587 (7th Cir.1994), *aff'd,* —— U.S. ——, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995); *Mentor Ins. Co. v. Brannkasse,* 996 F.2d 506, 520 (2d Cir.1993); *Uniroyal, Inc. v. Rudkin–Wiley Corp.,* 939 F.2d 1540, 1545 (Fed.Cir.1991); *Alberti v. Klevenhagen,* 896 F.2d 927, 938, *vacated in part,* 903 F.2d 352 (5th Cir.1990) (holding a district court's *failure* to use the prime rate to be in error). Indeed, we think the Seventh Circuit is correct—that the prime rate is not merely *as* appropriate as the Treasury Bill rate, but *more* appropriate:

> Interest at what rate? Surely the market rate. That is what the victim must pay—

we might have as to their probative value are somewhat allayed where evidence giving rise to these concerns enters the jury's ken.

**3.** Indeed, the use, where appropriate, of statistics based on averages derived from large samples may limit jury speculation more than imaginative prognostication founded on "facts" specific to a decedent.

either explicitly if it borrows money or implicitly if it finances things out of cash on hand—and the rate the wrongdoer has available to it.... [A] court should use the 'prime rate'—that is, the rate banks charge for short-term unsecured loans to creditworthy customers. This rate may miss the mark for any particular party, but it is a market-based estimate.

*In the Matter of Oil Spill by the Amoco Cadiz Off the Coast of France,* 954 F.2d 1279, 1332 (7th Cir.1992).

* * *

Accordingly, we affirm the entry of judgment for decedent's pre-death pain and suffering, and we affirm the district court's calculation of prejudgment interest at the prime rate. We reverse the judgment of the district court awarding damages for loss of society, and striking the award for loss of financial contributions as too speculative and remand for entry of the appropriate orders.