In re David Dwayne SMITH, Debtor.

Walter W. Kelley, Trustee, Plaintiff,

v.

Chevy Chase Bank, Defendant.

Bankruptcy No. 97–11019–JDW.
Adversary No. 98–1013.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

June 21, 1999.

Thomas D. Lovett, Albany, GA, for Chapter 7 Trustee.

Molly L. McCollum, Macon, GA, for Defendant.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Motion for Summary Judgment filed by Walter W. Kelley, Chapter 7 Trustee ("Trustee") of David Dwayne Smith's ("Debtor") bankruptcy estate. Trustee seeks to avoid the transfer of a lien by Debtor to Chevy Chase Bank ("Bank") as a preference. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(F). After considering the pleadings, evidence and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

On May 31, 1997, Debtor purchased and obtained possession of a 1997 Ford Ranger pickup truck for $13,255.00. Debtor made a down payment of $2,892.18 and signed a retail installment contract which created a security interest in the truck in favor of the seller to secure the unpaid balance of the purchase price. The seller assigned this contract and security interest to Bank. On July 11, 1997, the Sumter County tag agent received Bank's application for a certificate of title for the truck. On August 13, 1997, Debtor sought relief from his debts under Chapter 7 of the Bankruptcy Code.

Debtor's schedules, filed with his bankruptcy petition, list assets totaling $95,-595.00, with exemptions totaling $10,-250.00, and secured and unsecured debts totaling $115,688.00. Only one unsecured creditor has filed a claim in this case. That creditor seeks a $17,942.70 deficiency resulting from the liquidation of a mobile home. Trustee has certified that there are no assets available for administration in this case.

In December 1997, Debtor traded the 1997 Ford Ranger toward the purchase of another vehicle at Southwestern Ford.[1] Debtor had made five monthly payments of $206.71 on the truck loan. The first two payments were made within ninety days before Debtor filed his bankruptcy petition. The other three payments were made post-petition. The loan had a $10,-232.00 balance due at the time the truck was traded. Southwestern Ford sent Bank this balance due in full satisfaction of its lien. Trustee now seeks to have this Court render a summary judgment that Debtor's transfer of the lien to Bank constituted a preferential transfer under 11 U.S.C. § 547(b) entitling Trustee pursuant to 11 U.S.C. § 550(a) to recover, on behalf of Debtor's estate, the fair market value of the truck at the time of the transfer plus pre-judgment interest and costs. Bank disputes that section 547(b) is satisfied and asserts several affirmative defenses.

### Conclusions of Law

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

1. Trustee states no reason for this trade. A review of the case file reveals that the Court never granted Debtor permission to remove the truck from the estate.

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). If the moving party establishes each element of its claim on the undisputed facts and the non-moving party cannot demonstrate the existence of any affirmative defense, then summary judgment is appropriate. *See United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 720 (2d Cir.1993).

### Avoidance

Section 547(b) sets forth the six elements of a preference:

(1) "any transfer of an interest of the debtor in property;"

(2) "to or for the benefit of a creditor;"

(3) "for or on account of an antecedent debt owed by the debtor" before the "transfer was made;"

(4) "made while the debtor was insolvent;"

(5) "made (A) ... within 90 days before" bankruptcy ...

(6) that enables the creditor "to receive more than" it would receive if

(A) "the case were a case under chapter 7" of the Code;

(B) "the transfer had not been made;" and

2. Section 547(b) provides as follows:
Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;

(C) the "creditor received payment" of its debt "to the extent provided by" the Code.

5 KING, COLLIER ON BANKRUPTCY, ¶ 547.01, p. 547–8 to –9 (15th ed.1996) (quoting 11 U.S.C. § 547(b)).[2]

■ Section 550 of the Bankruptcy Code outlines the remedies available when a transfer is avoided pursuant to sections 547, 544, 545, 548, 549, 553(b), or 724(a). That section provides that "the trustee may recover, ... the property transferred, or ... the value of such property." 11 U.S.C. § 550(a).[3] "[T]he purpose of this provision is to 'restore the financial condition of the estate to the state in which it would have been had the transfer not occurred.'" *Kelley v. GMAC (In re Farmer)*, 209 B.R. 1022, 1024 (Bankr.M.D.Ga. 1997) (Walker, J.) (quoting *Tidwell v. Chrysler Credit Corp. (In re Blackburn)*, 90 B.R. 569, 573 (Bankr.M.D.Ga.1987) (Hershner, J.)).

Turning to the facts of this case, Trustee contends that a preferential transfer occurred on July 11, 1997, the date Bank's security interest in the unpaid balance of the purchase price of the 1997 Ford Ranger was perfected. *See* O.C.G.A. § 40–3–50(b) (1997). Bank disputes that the fourth and sixth elements have been satisfied.

(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547(b).

3. In full section 550 provides as follows:

(a) Except as provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
(2) any immediate or mediate transferee of such initial transferee.
11 U.S.C. § 550(a).

*Element Four—Insolvency*

■ Beginning with the fourth element, for purposes of preference analysis, the balance sheet test is used to determine whether a debtor is insolvent. 11 U.S.C. § 101(32). Thus, a debtor is insolvent if its debts exceed its assets. *Taylor v. Riverside–Franklin Properties, Inc. (In re Taylor)*, 228 B.R. 491, 502 (Bankr.M.D.Ga. 1998) (Walker, J.) citing *Pinto v. Philadelphia Fresh Food Terminal Corp. (In re Pinto)*, 98 B.R. 200, 209–10 (Bankr.E.D.Pa. 1989), *rev'd on other grounds*, No. CIV. A.89–3233, 1989 WL 234516 (E.D.Pa. Aug. 25, 1989). The party challenging a transfer as a preference enjoys a rebuttable presumption that the debtor was insolvent during the ninety days before its bankruptcy petition was filed. 11 U.S.C. § 547(f). Bank attempts to rebut this presumption by challenging the veracity of Debtor's schedules.

■ Debtor's schedules indicate that he had assets totaling $95,595.00 and debts totaling $115,688.00. Among Debtor's listed assets is a mobile home which he valued in his schedules at $2,000.00. However, Bank claims that Debtor grossly undervalued the mobile home, and that its true value, according to the NADA retail value, was $23,463.00. Therefore, Bank asserts that Debtor actually had assets worth $117,058.00 making him solvent in the amount of $1,370.00. However, this analysis does not recognize that exempt assets are excluded from the total assets calculation for purposes of insolvency analysis. *Id.* § 101(32) [4]; *Taylor*, 228 B.R. at 502. Debtor had exemptions totaling $10,250.00. Thus, even if Bank were correct in its valuation of the mobile home, once the exempt assets are removed from Bank's calculation of total assets, Debtor is left with assets worth only $106,808.00 render-

ing him insolvent in the amount of $8,880.00. Therefore, the Court finds that the fourth element of the preference analysis is satisfied.

*Element Six—Hypothetical Chapter 7 Case*

■ The Court also finds that the undisputed facts in this case satisfy the sixth element, that the transfer enabled Bank to receive more than it would have received in a hypothetical Chapter 7 case if the transfer had not occurred. The test for satisfying section 547(b)(5) has been stated as follows: "Unless the [debtor's] assets are sufficient to provide in liquidation a one hundred percent distribution to the unsecured creditors, any creditor holding an unsecured claim who received a partial payment during the preference period is in a position to receive more than he would have in a Chapter 7 liquidation." *Sweetapple Plastics, Inc. v. Philip Shuman & Sons, Inc. (In re Sweetapple Plastics, Inc.)*, 77 B.R. 304, 311 (Bankr.M.D.Ga. 1987) (Hershner, J.) citing *Utility Stationery Stores, Inc. v. American Portfolio (In re Utility Stationery Stores, Inc.)*, 12 B.R. 170, 179 (Bankr.N.D.Ill.1981).

■■ The undisputed facts in this case demonstrate that Debtor had at least one unsecured claim besides the unsecured claim Bank would have had if the transfer had not occurred. In addition, there will be no assets available for administration in this case unless the estate is able to recover the value of this transfer. The value of this transfer (discussed *infra*) would be insufficient to provide a one hundred percent dividend to Bank and the other unsecured creditor. Therefore, the fact that Bank received the benefit of the lien during the preference period necessarily en-

---

4. Section 101(32) defines "insolvent" as follows:

 (A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—

 (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
 (ii) property that may be exempted from property of the estate under section 522 of this title[.]

 11 U.S.C. § 101(32)(A).

abled it to receive more than it would have received in a hypothetical Chapter 7 case had the transfer not occurred.[5] As a result, having found that the fourth and sixth elements have been satisfied, the Court concludes that the perfection of the lien on the 1997 Ford Ranger to Bank constitutes a preference.

### Affirmative Defenses
### Section 547(c) Exceptions

Not every transfer that satisfies section 547(b) is avoidable. Subsection (c) of section 547 describes eight transfers which, though they may constitute a preference under section 547(b), nevertheless, will not be avoided. 11 U.S.C. § 547(c). Bank relies on subsection (c) as an affirmative defense to Trustee's claim.[6] Specifically, Bank asserts 1) that the transfer was a contemporaneous exchange for new value (section 547(c)(1), (3)), and/or 2) that the transfer was made in the ordinary course of Debtor and Bank's business (section 547(c)(2)). The Court next addresses these two defenses.

■ Section 547(c) contains two subsections that address transfers intended to be a contemporaneous exchange for new value. However, only one such subsection, (c)(3), applies to except from avoidability the type of lien transferred in this case. Generally, section 547(c)(3), the enabling loan exception, excepts a preferential transfer from avoidance if the transfer creates a security interest taken to enable the debtor to purchase the secured property if the interest is perfected on or before twenty days after the debtor receives possession of the secured property. *Gower v. FMCC (In re Davis)*, 734 F.2d 604, 605 (11th Cir.1984). The retail installment contract assigned to Bank which created a security interest in the truck in favor of the seller to secure the unpaid balance of the purchase price falls within the provisions of section 547(c)(3)(A). However, Bank did not perfect its lien on the truck until July 11, 1997, forty-one days after Debtor received possession of the truck on May 31, 1997. Therefore, Bank failed to satisfy the twenty-day requirement of section 547(c)(3)(B), and thus, is not protected by section 547(c)(3).

■ The other provision of section 547(c) which excepts from avoidance preferential transfers intended to be a contemporaneous exchange for new value is contained in subsection (c)(1). However, the United States Court of Appeals for the Eleventh Circuit has held that section 547(c)(1) "is not available to except from

---

5. The bar date for filing claims in this case was August 10, 1998. The only unsecured claim in the case was filed by BankAmerica Housing Services, Inc. in the amount of $17,942.70. This claim appears to be a deficiency claim arising out of the repossession and liquidation of a mobile home. The circumstances of this case and the analysis as to the so called "hypothetical liquidation test" can be somewhat complex, depending upon the complexity of the simulation the Court might construct in the name of "hypothetical." For example, what if no unsecured claims had been filed in this case, should the simulation yield to reality if unsecured creditors neglected their rights to file claims? Should the Court examine the sole unsecured claim in this case to determine whether the debtor could successfully object to the claim on the grounds that the foreclosure and liquidation of the collateral was commercially unreasonable? What if the debtor successfully objected to that claim after this Court enters a judgment based upon the validity of that claim as the sole unsecured claim in the case? According to the schedules in this case, the only unsecured creditor was the debtor's landlord for back rent. If the "hypothetical liquidation test" were conducted shortly after the filing of this case, and if the debtor could be expected to pay the pre-petition rent from post-petition earnings in order to continue to occupy the premises, should the Court conclude that there would be no unsecured creditors in the case? This invitation by the Code to construct a hypothetical model to be used to determine the liability of a party in an adversary proceeding seems dangerously arbitrary and somewhat contrary to the policy that the law should specify legal consequences as clearly as possible.

6. Section 547(g) places the "burden of proving the nonavoidability of a transfer under subsection (c)" on the transferee.

avoidance an enabling loan perfected beyond the [twenty] day period allowed in [section] 547(c)(3)." *Davis,* 734 F.2d at 607. The Eleventh Circuit reached this conclusion after observing, first, that the legislative history of section 547(c)(1) indicates that the section was not intended to protect enabling loans, and second, that applying section 547(c)(1) to these loans would render section 547(c)(3) meaningless. *Id.* The court commented that section 547(c)(3)'s mechanism for excepting enabling loans "negate[d] the applicability of other means of exception." *Id.* Therefore, Bank may not avail itself of the protection provided by section 547(c)(1) with regard to this transfer. In addition, because section 547(c)(3) negates other means of excepting security interests securing enabling loans from avoidance, Bank may not avail itself of the protection provided by the ordinary course of business exception contained in section 547(c)(2). *Tidwell v. Chrysler Credit Corp. (In re Blackburn),* 90 B.R. 569, 572 (Bankr.M.D.Ga.1987) (Hershner, J.). Having found that none of the statutory exceptions to avoiding a preferential transfer contained in section 547(c) apply to except this lien from avoidance, the Court next considers Bank's other affirmative defenses to Trustee's action—laches and equitable estoppel.

### Laches

■■■ The first of these defenses raised by Bank is laches. "The defense of laches requires ... (1) a lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." 5 KING, COLLIER ON BANKRUPTCY, ¶ 5010.02[7], p. 5010–7 (15th ed.1997); *see also* O.C.G.A. §§ 9–3–3, 23–1–25 (1982). Bank complains that Trustee's claim should be barred because he delayed bringing this adversary until four months after Debtor's bankruptcy case was filed during which time the truck was sold to a third party. Initially, the Court notes that Trustee brought this action well within the applicable time period allowed for bringing such actions.[7] But even if the four months did constitute undue delay, Bank's defense fails because it neglected to show any prejudice suffered as a result of the delay. *Clover Realty Co. v. J.L. Todd Auction Co.,* 240 Ga. 124, 126, 239 S.E.2d 682, 683 (1977) ("[T]o prevail on a plea of laches, it is essential that the pleading party prove harm caused him by the delay."). Therefore, having failed to demonstrate the existence of its defense, laches does not prevent Trustee from asserting this claim.

### Equitable Estoppel

■■ As to Bank's final defense, equitable estoppel, the Court finds that this defense fails as well. Bank asserts that it was deprived of the protection afforded by section 547(c)(3) because of Debtor's failure to timely complete documentation re-

---

7. The statute of limitations applicable to preference avoidance actions is contained in section 546 which provides, in pertinent part:

> (a) An action or proceeding under section ... 547 ... of this title may not be commenced after the earlier of—
> (1) the later of—
> (A) 2 years after the entry of the order for relief; or
> (B) 1 year after the appointment or election of the first trustee under section 702 ... of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

> (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a). The statute of limitations applicable to actions brought by a trustee to determine the liability of the transferee of an avoided transfer is contained in section 550 which provides:

> (f) An action or proceeding under this section may not be commenced after the earlier of—
> (1) one year after the avoidance of the transfer on account of which recovery under this section is sought; or
> (2) the time the case is closed or dismissed.

*Id.* § 550(f).

quested by seller. Thus, Bank argues it would be inequitable for Trustee to be allowed to assert its claim on behalf of Debtor's estate.[8] However, Bank again failed to allege any facts that demonstrate the existence of this defense. Therefore, having found that Bank is unable to avail itself of any of its asserted affirmative defenses, this preferential transfer will be avoided. The Court must now determine what remedy is available to Trustee as a result of the avoidance.

### Recovery

■■■■■ Trustee asserts that as a result of the avoidance he is entitled to recover on behalf of the estate the fair market value of the truck as measured at the time of the transfer of the lien on July 11, 1997. This Court disagrees. As this Court made clear in *Kelley v. GMAC (In re Farmer)*, 209 B.R. 1022, 1024 (1997), the "transfer" at issue was of a lien, not a vehicle. *Id.* at 1024. Thus, this adversary proceeding seeks to set aside the transfer of a lien not a vehicle. The goal in awarding a recovery pursuant to section 550 is to return to the estate only what it lost as a result of the transfer. As a result of this transfer, the estate lost the value of the truck to the extent of Bank's lien. Therefore, pursuant to section 550, the estate is entitled to recover that value. As this Court stated in *Farmer*, "the recovery for the avoidance of the lien is inherent in the enhancement of the value of the vehicle, in its character as property of the estate, free and clear of the lien. The enhancement of value is itself a recovery of 'the property transferred' as contemplated by section 550." *Id.* at 1025. The lien, once avoided, is void ab initio so that the truck is treated as

though it entered the estate unencumbered enabling the estate to enjoy its full value.

■■■■■ Trustee argues that in this case, simply avoiding the lien does not constitute a recovery under section 550 because the truck is in the hands of a bona fide purchaser, not the estate and, therefore, the estate cannot realize the enhanced value of the truck by virtue of the avoidance. While it is true that the facts of this case are much more complicated than in *Farmer*, where the automobile remained in the estate, the facts do not change the rule that the recovery for the preferential transfer of a lien is avoidance of that lien. The truck is unavailable to the estate, not because of the lien, but because of the post-petition transfer of the truck to Southwestern Ford. The transfer of the lien had nothing to do with transfer of the truck. The truck was transferred because Debtor decided he wanted a different vehicle. Therefore, what Trustee seeks to recover is the value the estate lost when Debtor traded the truck to Southwestern Ford, and, rather than depositing the proceeds back into the estate, forwarded them to Bank, who, because the lien was avoided, held no lien on the vehicle. This post-petition transfer was *not* a preference, so the Court must look elsewhere in the Code for authority to set aside the transfer so that the estate can recoup this loss.

That authority can be found in section 549. Section 549 provides, in pertinent part, that:

(a) . . . the trustee may avoid a transfer of property of the estate—

---

**8.** A debtor is not likely to enjoy any benefit from a failure to timely complete the documentation at issue in this case. Section 522(g) prevents the debtor from claiming an exemption in any property that the trustee recovers in a preference action if the transfer was made voluntarily. Therefore, instead of entering into a reaffirmation agreement to pay the bank according to the terms of the original loan, the debtor finds himself liable

to pay the creditor for the full value of the subject property or the amount of the debt, whichever is less, on repayment terms that are not likely to be as convenient as the creditor had provided. In short, the avoidance of a lien such as the one in this case is usually a bad thing for a debtor and most incongruous with the principles of equitable estoppel.

(1) that occurs after the commencement of the case; and

(2) . . . .

(B) that is not authorized under this title or by the court.

11 U.S.C. § 549. As previously stated, because Bank's lien is avoided, the truck was unencumbered property of Debtor's estate. *Id.* § 541(a)(1).[9] When Debtor traded the truck in toward the purchase of a new vehicle in December 1997, the proceeds of the truck became property of the estate. *Id.* § 541(a)(6).[10] However, rather than depositing the proceeds from the trade-in of the truck in the estate, debtor caused those funds to be transferred to Bank. That transfer occurred approximately four months after commencement of this case. No provision of the Code authorized such a transfer, nor did this Court. Therefore, Trustee can avoid the transfer pursuant to section 549.[11] Further, Trust-ee may recover these proceeds for the benefit of the estate pursuant to section 550(a). Therefore, Trustee's recovery of the $10,232.00 results from the unauthorized post-petition transfer of the proceeds from the truck rather than the preferential transfer of the lien.

■ Next, the Court must consider whether Trustee may recover the five monthly installments of $206.71 Debtor made to Bank. Two of these payments were made pre-petition within the ninety-day preference period, and three were made post-petition. Regarding the post-petition payments, these cannot be recovered by Trustee because the payments were made with Debtor's post-petition income. Such income is not property of the estate and thus the estate suffered no loss as a consequence of those payments. Resolution of Trustee's right to recover the

9. Section 541(a)(1) provides as follows:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1).

10. Section 541(a)(6) provides as follows:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

. . . .

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after commencement of the case.

11. Section 547(b) provides that the trustee may "avoid" a preferential transfer. "Avoid" means "to make void." BLACK'S LAW DICTIONARY 136 (6th ed.1990). "Void" means to have no legal force or binding effect and to be incapable of ratification. *Id.* at 1573. Thus, section 547(b) treats an avoided transfer as having never been capable of legal enforcement, even though the parties may have treated the transfer as having legal force before its avoidance. The tension between void and voidable is something of a legal quagmire. While the definition suggests that making void by avoidance renders the transfer incapable of ratification, the Code at section 362(d) invites annulment of the automatic stay so as to ratify an action which may be taken in violation of it. While acts done in violation of the automatic stay have been deemed void and not voidable by the Eleventh Circuit, *see Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306, 1308 (1982), there remains the possibility that such an action may not be void but may be deemed to be something else after having been considered and approved by the court. The relevance of this distinction lies in the possibility that Bank might contend the transfer of funds post-petition, having been made before the lien was avoided, could not be said to be "not authorized" under section 549(a)(2)(B). If the lien was always void, then the payment of it could not be deemed "authorized." It is acknowledged that Bank might argue that the payment was authorized at the time it was made because no order to the contrary had been entered. The conclusion that an act was "not authorized" at a time when there was no indication to the contrary is at odds with common sense. However, the Code creates certain legal realities which take precedence over common sense in some circumstances. This note is provided merely for the purpose of conceding that this may be one of those circumstances.

pre-petition payments, however, is not quite as simple.

▮ The recovery of the two pre-petition installments paid by Debtor to Bank follows a different analysis path. Those payments are "transfers" of a different nature than the "transfer" in the form of the conveyance of the lien. The recovery of those monies is premised on the previously explained assumption that the underlying debt was unsecured due to the avoidance of the lien. The payments do not make up a component part of the value of the lien, but are instead recoverable pursuant to section 550 as separate section 547(b) preferential transfers which had the effect of permitting the creditor to recover more on its unsecured claim than it would have received as a creditor in a hypothetical liquidation.

However, as previously stated, transfers that satisfy section 547(b) are not avoidable to the extent they are excepted from avoidance by section 547(c). Bank has raised the ordinary course or business defense contained in section 547(c)(2). While the defense did not apply to except the transfer of the lien from avoidance, it may be available to except the two pre-petition payments from avoidance.

▮ Section 547(c)(2) provides as follows:

> (c) The trustee may not avoid under this section a transfer—
>
>> (2) to the extent that such transfer was—
>>
>>> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>>>
>>> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>>>
>>> (C) made according to ordinary business terms[.]

11 U.S.C. § 547(c)(2). The purpose of this exception " 'is to leave undisturbed normal financial relations, because [such an excep-

tion] does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditor during the debtor's slide into bankruptcy.' " *Marathon Oil Co. v. Flatau (In re Craig Oil Co.),* 785 F.2d 1563, 1566 (11th Cir.1986) (alteration in the original) (quoting H.R. REP. No. 595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6329). In order to qualify for this exception, three conditions must be satisfied. The transfer must have been (1) made as payment of a debt incurred in the ordinary course of the debtor's business or financial affairs; (2) made in the ordinary course of business between the debtor and creditor; and (3) made according to ordinary business terms. *Id.* at 1564–65.

▮ Whether the transfer was made in the ordinary course of business of the debtor and creditor is a subjective inquiry. Factors which may be considered in making this determination include: "the prior course of dealing between the parties, the amount of the payment, the timing of the payment, and the circumstances surrounding the payment." *Ellenberg v. Plaid Enters., Inc. (In re T.B. Home Sewing Enters.),* 173 B.R. 790, 795 (Bankr. N.D.Ga.1993). Whether the payment was made according to ordinary business terms is an objective inquiry. *Id.* at 798. In making this determination, the court must actually examine the relevant industry standards. *Miller v. Florida Mining and Materials (In re A.W. & Assocs., Inc.),* 136 F.3d 1439, 1442 (11th Cir.1998); *Ellenberg,* 173 B.R. at 798.

The Sixth Circuit Court of Appeals has held that section 547(c)(2) excepts from avoidance payments made on long-term consumer debt, even if it is the first transaction between the debtor and the creditor, so long as it is a "normal financial relation" and not an "unusual action" undertaken during the "slide into bankruptcy." *Gosch v. Burns (In re Finn),* 909 F.2d 903, 907–08 (6th Cir.1990). The payments at issue in this case appear to satis-

fy these requirements.[12] However, Bank failed to allege the facts necessary for the Court to make this determination.

The only facts that Bank alleged with regard to this defense was that Bank, in answer to Trustee's interrogatories, "showed that the payments made by the debtor to [Bank] after purchasing the vehicle were payments [sic] transfers made pursuant to the note signed by the debtor and do not constitute preferential transfers." (Def.'s Resp. to Mov.'s Facts). This allegation does little more than state a legal conclusion, and certainly does not satisfy Bank's burden of demonstrating the existence of the affirmative defense after Trustee established each element of his claim. *See Kelley v. Chevy Chase Bank (In re Smith)*, 231 B.R. 130 (Bankr. M.D.Ga.1999) (Walker, J.). Bank failed to allege any facts regarding the ordinary business relationship between Debtor and Bank, or the relevant industry standards. As a result, the Court cannot find as a matter of law that these payments are excepted from avoidance by section 547(c)(2).

The Court assumes that Bank did not allege the necessary facts to prevail in this defense because Bank likely did not foresee the path of analysis this Court has traveled in resolving this motion. It is clear from both parties' briefs that they believed that avoidance of the lien would settle all of the recovery issues in this case. Because the parties did not understand that the lien transfers and payment transfers require differing analysis, their focus was solely on the transfer of the lien. The Court has now clarified the analysis, but believes it would be unfair to deny Bank the opportunity to prove its defense when the parties did not understand how the law would be applied to this case.[13] Therefore, the Court will allow Bank ten days leave to file a supplemental pleading regarding the facts needed to prove the section 547(c)(2) defense. Trustee, of course, will have an opportunity to dispute those facts if he is able to do so.

### Interest and Costs

In addition to the value of the transfers, Trustee asks this Court to award pre-judgment interest and costs. Pre-judgment interest is awarded in preference actions for the following reasons:

"(1) restore to the estate the full value of the preference gained by the preferred creditor;

(2) prevent the unjust enrichment of the preferred creditor;

(3) eliminate the preferred creditor's incentive to prolong preference litigation by eliminating any economic benefit that he might derive by holding onto the debtor's money and using it for his own benefit; and

---

12. The loan documents provide that the payments were due monthly beginning on July 1, 1997. Though the first payment was made on July 1st, the second pre-petition payment was not made until August 4, 1997. Late payments are less likely to be considered as made in the ordinary course. *Craig Oil*, 785 F.2d at 1567–68. However, the loan documents provide that the loan was not in default and late charges could not be assessed until ten days had passed from the date payment was due. Therefore, such payments were not "late" so long as they were made within the ten day grace period as each of the pre-petition payments were.

13. The Court also notes that this is the second motion for summary judgment regarding this matter. Trustee's first motion was denied without prejudice because Trustee failed to assert facts necessary for the Court to decide whether the lien transfer was a preference. *Kelley v. Chevy Chase Bank (In re Smith)*, 231 B.R. 130 (Bankr.M.D.Ga.1999) (Walker, J.). The Court allowed Trustee an opportunity to re-file this motion. Trustee did so, yet again failed to allege the facts necessary for the Court to find that the lien transfer was a preference. The Court held a hearing to clarify to the parties what was lacking in the pleadings and further provided Trustee the opportunity to amend his Statement of Uncontested Facts. Having given the Trustee so many opportunities to correct his errors due to his misunderstanding of how the Court was applying the law, it would be extremely inequitable for this Court to deny that opportunity to Bank now.

(4) compensate the debtor for his loss of use of the preference taken by the preferred creditor."

*Kelley v. David I. Peterson, Inc. (In re Odom Farms)*, Chp. 12 Case No. 90–10017–ALB, Adv. No. 91–1080–ALB, slip op. at 3 (Bankr.M.D. Ga. Nov. 13, 1992) (Laney, J.) (quoting *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 127 B.R. 903, 908 (Bankr.S.D.Fla. 1991)). The Court will award Trustee prejudgment interest in accordance with the well-reasoned opinion of Judge Laney in *Odom Farms*.[14]

 After carefully analyzing the case law on this topic, Judge Laney determined that "pre-judgment interest runs from the date of demand for the return of the transferred property, or, in the absence of a prior demand, from the date of service of the adversary proceeding," *id.* at 6 (relying on *Ellenberg v. Mercer (In re Home Co.)*, 108 B.R. 357 (Bankr.N.D.Ga. 1989) and *White v. Bradford (In re Tax Reduction Institute)*, 138 B.R. 325 (Bankr. D.C.1991)), and is computed daily, *id.* at 8 (citing 28 U.S.C. § 1961(b)). The rate of interest is determined by the federal statutory post-judgment interest rate under 28 U.S.C. § 1961(a) which is " 'a rate equal to the coupon issue yield (as determined by the Secretary of Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills.' " *Odom Farms*, slip op. at 7–8 (quoting 28 U.S.C. § 1961(a)). On March 12, 1998, Trustee sent Bank a letter demanding the return of any monies it received on account of its lien placed on the truck. Thus, March 12, 1998 constitutes the date pre-petition judgment interest will begin to run. The rate of interest as determined by 28 U.S.C. § 1961 is 5.407%. In addition to pre-judgment interest, the Court will award Trustee its costs in bringing this action as they are determined at a later date in accordance with established procedure.[15]

*Conclusion*

The transfer of the perfected lien on the 1997 Ford Ranger constitutes a preference under section 547(b) of the Bankruptcy Code. None of Bank's affirmative defenses preclude the avoidance of this preference. The remedy is to avoid the lien. However, avoidance of the lien, in this case, did not provide a recovery to Debtor's estate because of Debtor's unauthorized post-petition transfer of the truck's proceeds. Such transfer is avoided pursuant to section 549 entitling Trustee to recover the $10,232.00. This sum was paid to Bank from the proceeds of the vehicle to satisfy Bank's lien, which lien was avoided pursuant to this Order in this adversary proceeding. Trustee receives the proceeds because this payment to Bank was "not authorized." Debtor's monthly payments made post-petition to bank toward satisfaction of the car loan were not made with estate property and, therefore, are not subject to recovery by Trustee. However, whether the pre-petition payments are avoidable and subject to recovery by Trustee is yet undecided due to Bank's failure to allege the facts necessary for the Court to determine whether they were made in the ordinary course of Debtor's financial affairs. Therefore, Bank is granted 10 days leave to supplement its pleadings. Once Bank has done so, the Court will issue a further Order responsive to the request for summary judgment on this issue. Any recovery Trustee is entitled to receive will include pre-judgment interest and costs.

---

**14.** John T. Laney, III, United States Bankruptcy Judge, Middle District of Georgia.

**15.** See Fed.R.Bankr.P. 7054 and LBR 7054–1.