**In re NETTEL CORPORATION, INC., et al., Debtors.**

**Wendell W. Webster, Trustee, Plaintiff,**

v.

**Harris Corporation, Defendant.**

**Bankruptcy No. 00–01771.
Adversary No. 02–10128.**

United States Bankruptcy Court, District of Columbia.

April 15, 2005.

---

Linda M. Correia, Webster, Fredrickson, & Brackshaw, Washington, DC, for Wendell Webster, trustee.

Philip T. Evans, Holland & Knight, Washington, DC, for Harris Corp.

## DECISION REGARDING TRUSTEE'S MOTION FOR PREJUDGMENT INTEREST

S. MARTIN TEEL, JR., Bankruptcy Judge.

In a Supplemental Decision Regarding Plaintiff's Motion for Summary Judgment (D.E. No. 45, signed December 9, 2004, and entered December 10, 2004), this court awarded the Chapter 7 trustee prejudgment interest from the date of the filing of his complaint at the rate provided by 28 U.S.C. § 1961 (hereinafter "Treasury Bill rate"). On December 10, 2004, the same day the court entered the aforementioned order, the Chapter 7 trustee filed a motion seeking prejudgment interest calculated using the prime rate rather than the Treasury Bill rate (D.E. No. 44). Harris Corporation, the defendant in this adversary proceeding, objects to the Chapter 7 trustee's motion only to the extent that the trustee has asked the court to use the prime rate rather than the Treasury Bill rate to calculate the prejudgment interest award (D.E. No. 56, filed January 6, 2005). The defendant does not challenge the underlying award of prejudgment interest, nor does it challenge the trustee's proffer as to the applicable prime rate in the event the prime rate is held to apply.

■ In light of *Forman v. Korean Air Lines, Co.*, 84 F.3d 446, 450 (D.C.Cir.), *cert. denied*, 519 U.S. 1028, 117 S.Ct. 582, 136 L.Ed.2d 513 (1996), the court finds that the award of prejudgment interest in this preference action should be calculated using the prime rate rather than the Trea-

sury Bill rate. Accordingly, and for reasons stated in more detail below, this court will grant the trustee's motion and amend the court's December 10, 2004 Supplemental Decision to reflect that the prejudgment interest award in this preference action is to be calculated using the prime rate. There being no objection to the trustee's proposed methodology for determining the prime rate, the court will look to the Federal Reserve statistical release of selected interest rates, Exhibit 1 of the trustee's motion, to determine the applicable prime rate.

## II

■ The rule of reasonable discretion governs the award of prejudgment interest in federal courts. See *McKesson Corp. v. The Islamic Republic of Iran*, 116 F.Supp.2d 13, 40 (D.D.C.2000). In 1991, this court held that if a trustee fails to specify a different rate or introduce evidence as to the appropriate rate, prejudgment interest on a preference action award will be calculated at the rate in effect under 28 U.S.C. § 1961(b) (the Treasury Bill rate). *White v. Bradford (In re Tax Reduction Institute )*, 138 B.R. 325 (Bankr. D.D.C.1991).

The defendant contends that the "logic and rationale" behind *Tax Reduction Institute* "continue to be followed in this jurisdiction, and [have] been adopted by other bankruptcy courts." [1] Def's Mem. at 2. *Tax Reduction Institute*, however, did

not articulate any meaningful analysis or discernible rationale for other courts to follow. At the time *Tax Reduction Institute* was decided, most federal courts used the Treasury Bill rate to calculate prejudgment interest. See *In re Brantley*, 116 B.R. 443 (Bankr.D.Md.1990) ("Most federal courts which have addressed the issue of the applicable prejudgment interest rate in a case involving a federal question have used the applicable federal postjudgment interest rate pursuant to 28 U.S.C. § 1961. Specifically, the federal postjudgment interest rate determined pursuant to 28 U.S.C. § 1961 has been utilized as the appropriate prejudgment interest rate in this court on recoveries under the Bankruptcy Code."). In deciding *Tax Reduction Institute*, this court simply followed the trend of other courts by borrowing the statutory rule for calculating post-judgment interest to calculate prejudgment interest, viewing this as a logical, although not legally imperative, way to supplement the legislative void that exists with respect to the calculation of prejudgment interest. [2] This court's consistent use of the Treasury Bill rate in subsequent decisions does not reflect a determination by the court that the Treasury Bill rate is superior to the prime rate for calculating prejudgment interest, nor does it reflect the court's belief that it was bound by law or precedent to do so. Instead, it reflects the court's desire to exercise its discretion in a uniform and predictable fashion notwithstanding

---

1. In support of this proposition, the defendant cites to *Kelley v. Chevy Chase Bank (In re Smith )*, 236 B.R. 91 (Bankr.M.D.Ga.1999). First, the court notes that the *In re Smith* court only cited *Tax Reduction Institute* for the proposition that prejudgment interest runs from the date of demand or from the date of service in an adversary proceeding, a legal matter which is not genuinely disputed in the trustee's motion. *Id.* Second, the court observes that although the *In re Smith* court applied the Treasury Bill rate to calculate

prejudgment interest, it did so without offering any analysis or rationale as to why.

2. The defendant complains that "the Trustee did not indicate in his Complaint or Motion for Summary Judgment that he intended to seek interest at a rate different than that relied upon in this jurisdiction." Def's Mem. at 3. That observation, however, simply begs the question of what rate is currently relied upon in this jurisdiction.

the lack of definitive guidance on the issue of how to calculate prejudgment interest.

The court is mindful that *Tax Reduction Institute* has been cited for the proposition that the Treasury Bill rate should be used to calculate prejudgment interest. *See In re International Loan Network, Inc.*, 160 B.R. 1, 20 (Bankr.D.C.1993); *In re Forrest Marbury House Associates Ltd. Partnership*, 137 B.R. 554, 559 (Bankr.D.C.1992); *In re Smith*, 236 B.R. 91, 104 (Bankr. M.D.Ga.1999). *Tax Reduction Institute*, however, was an exercise of this court's discretion, not a directive binding other courts or abrogating their discretion.

Several years after *Tax Reduction Institute* was decided, the United States Court of Appeals for the District of Columbia Circuit weighed in on the issue when it decided *Forman* in 1996. In *Forman*, the court of appeals held that it was not an abuse of the district court's discretion to use the prime rate to calculate prejudgment interest on a plaintiff's jury award for pain and suffering. The *Forman* court further observed in dictum that not only was it within the district court's discretion to use the prime rate rather than the Treasury Bill rate, it was, in fact, *more appropriate.* ("Interest at what rate? Surely the market rate. That is what the victim must pay—either explicitly if it borrows money or implicitly if it finances things out of cash on hand—and the rate the wrongdoer has available to it .... [A] court should use the 'prime rate'—that is, the rate banks charge for short-term unsecured loans to creditworthy customers. This rate may miss the mark for any particular party, but it is a market-based estimate."). Although *Forman* does not remove the question from the trial court's discretion, it establishes a new operative presumption that the prime rate should be used to calculate prejudgment interest in the D.C. Circuit.

In the wake of *Forman*, judges in the D.C. Circuit have found it appropriate to use the prime rate to calculate prejudgment interest.[3] In the exercise of their discretion, other judges have found it appropriate to use the Treasury Bill rate to calculate prejudgment interest notwithstanding *Forman*, but those decisions are distinguishable from this case because of the parties' acquiescence or the governmental character of a party.[4] In light of

3. *See Chadwick v. District of Columbia*, 56 F.Supp.2d 69, 73 n. 2 (D.D.C.1999) (citing *Forman* for the proposition that "[u]nless the parties agree otherwise, prejudgment interest should be awarded at the prime rate for each year between plaintiff's constructive discharge and the entry of judgment."); *Thomas v. National Football League Players Assn.*, 273 F.3d 1124 (C.A.D.C.2001) (in light of *Forman*, Title VII defendant could not effectively challenge the use of the prime rate to calculate prejudgment interest); *McKesson Corp. v. The Islamic Republic of Iran*, 116 F.Supp.2d 13, 40 (D.D.C.2000) ("The average prime rate which Plaintiffs argue for has been repeatedly held as appropriate by the D.C. Circuit; indeed, the D.C. Circuit has found it 'more appropriate' than a fixed investment rate like the 6–Month Deposit rate which [the Defendant] suggests.").

4. *See Griffin v. Washington Convention Center*, 2000 WL 1174967 *6 (July 21, 2000, D.D.C.) ("The decision as to how to compute prejudgment interest is wholly within the discretion of the trial court .... [and] I will exercise my discretion and follow plaintiff's unopposed suggestion that I use the post-judgment rates that are posted by the Clerk of Court, which are the 12 month Treasury Bills, updated at each new auction.") (Title VII discharge case); *Jefferson v. Milvets System Technology, Inc.*, 986 F.Supp. 6, 9 (D.D.C.1997) (failing to acknowledge *Forman*, and stating "Neither the plaintiff nor the defendant has suggested a methodology whereby the Court is to calculate pre-judgment interest on the back pay award. Therefore, the Court holds that prejudgment interest shall be calculated in accordance with 28 U.S.C. § 1961, which governs post-judgment interest."); *Hartman v. Duffey*, 8 F.Supp.2d 1 (D.D.C.1998)(applying the one-

the fact that the trustee has opposed the application of the Treasury Bill rate, and given the defendant's failure to demonstrate that a trustee pursuing a preference action on behalf of a bankruptcy estate against a private corporation differs in any relevant way from other private litigants, the court sees no reason why it should, in the exercise of its discretion, depart from the rationale of *Forman* in deciding how to calculate prejudgment interest.[5]

■ The purpose of awarding prejudgment interest in a preference action is to "(1) restore to the estate the full value of the preference gained by the preferred creditor; (2) prevent the unjust enrichment of the preferred creditor; (3) eliminate the preferred creditor's incentive to prolong preference litigation by eliminating any economic benefit that he might derive by holding onto the debtor's money and using it for his own benefit; and (4) compensate the debtor for his loss of use of the preference taken by the preferred creditor." *In re Smith,* 236 B.R. 91, 103 (Bankr.M.D.Ga.1999), *quoting Kelley v. David I. Peterson, Inc. (In re Odom Farms),* Chp. 12 Case No. 90–10017–ALB,

Adv. No. 91–1080–ALB, slip op. at 3 (Bankr.M.D.Ga., Nov. 13, 1992).

The defendant contends that it was unnecessary for the trustee to borrow money during the pendency of the adversary proceeding. Harris urges that it is accordingly appropriate to focus on the benefit Harris received from holding onto the moneys, and that in so doing a savings yield (as under the 28 U.S.C. § 1961 judgment rate which incorporates the rate of interest paid by the U.S. Treasury on one-year notes sold to the investing public) is more appropriate than the prime rate which, as a borrowing rate, is historically higher. Harris does not contend that it in fact simply set aside the payments from the debtor and placed them in savings.[6] Instead, Harris looks to the hypothetical benefit it would have enjoyed had it simply invested the funds in savings. That is insufficient to rebut the presumption in favor of using the prime rate.

Moreover, whether or not the trustee actually had to borrow money on behalf of the estate during the pendency of the adversary proceeding does not fully address

year Treasury Bill rate of interest to calculate prejudgment interest in Title VII action (a) because it was the pre-*Forman* recommendation of the experts and (b) because there would be no unjust enrichment to the federal government defendant because it can only borrow at the Treasury Bill rate and not the prime rate).

5. The defendant argues that *Forman* should not govern this preference action because "there is a critical distinction between injury under a tort or contract claim as compared to recovery of a preference payment." Specifically, the defendant argues that because a contract or tort plaintiff's right to recovery accrues earlier than that of a preference action plaintiff (because a preferred creditor at one time had a right to the now disputed property, whereas a tort or contract defendant was always in the wrong) courts should use a different rate to calculate prejudgment

interest on a preference action award. Def's Mem. at 3. The question of when the claim accrues, however, is already accounted for by allowing prejudgment interest to run only from either the first demand for return of the transferred property or upon commencement of the adversary proceeding. Thus, the preferred creditor is not penalized for the period of time in which it justifiably believed itself to be in rightful possession of property that is now claimed as property of the estate.

6. It would be surprising if Harris, a manufacturer and supplier of computer hardware and associated software, had not utilized the payments as part of its operating capital. Indeed, Harris's receipt of the preference payments would have avoided the necessity of its borrowing operating capital at a rate higher than the prime rate if it did not qualify for prime rate loans.

the issue of measuring the harm to the estate. A cash collateral order was in existence in the case pursuant to which secured creditors received replacement liens on estate property in exchange for the use of their cash collateral. Those liens secured debts that were accruing interest at commercial rates (which likely were in excess of the prime rate) to the extent of sufficient value in their original and replacement collateral to allow for interest to accrue. Thus, the estate was potentially harmed to the extent that the funds Harris received were unavailable to reduce the secured debt. Necessarily, an inquiry into such harm would be burdensome, thus weighing in favor of adhering to the presumption in favor of use of the prime rate.

Furthermore, that does not exhaust the possible harms to the estate. Had the funds been returned by Harris, they could, theoretically, have been used to pay administrative claims more expeditiously. The administrative claimants, such as the trustee's law firm, typically borrow at prime rates, not Treasury bill rates. Moreover, the preference funds, had they been in the estate, might have enabled the trustee to pursue matters the estate was otherwise unable to afford to pursue. The presumption in favor of the prime rate ought to apply when only through a cumbersome and highly speculative exercise could the court attempt to reconstruct how the estate or its administrative claimants could have maximized the value of the preference funds had they not been retained by Harris after this proceeding commenced.

As noted by the *Forman* court, the prime rate is a market-based estimate for calculating an appropriate prejudgment interest award, and both the Treasury Bill rate and the prime rate are imperfect tools for accomplishing this task. Notwithstanding that both rates have shortcomings, the court of appeals for this circuit has determined that of these two available options, the prime rate is the more appropriate rate to use in calculating prejudgment interest. The defendant has failed to offer any persuasive argument as to why the rationale advanced in *Forman* is not equally applicable to this preference action,[7] and despite the imperfections that will exist in whatever rule the court elects to follow, adhering to *Forman* will have the virtue of certainty.

## III

Based on the foregoing, the court will grant the trustee's motion and amend the court's Supplemental Decision Regarding Plaintiff's Motion for Summary Judgment (D.E. No. 45) to reflect that the prejudgment interest award in this preference action is to be calculated using the prime rate and not the Treasury Bill rate. Without objection by Harris, the trustee calculates that interest using prime rates should be the monthly bank prime rates for September of each year this proceeding has been pending[8] with interest compounded

7. The *Forman* court relied on Seventh Circuit law in concluding that it is more appropriate to use the prime rate than the Treasury Bill rate to calculate prejudgment interest, and at least one bankruptcy court in the Seventh Circuit has likewise used the prime rate to calculate prejudgment interest in preference actions. *See In re Carini,* 245 B.R. 319 (Bankr.E.D.Wis.2000) ("The plaintiff is also entitled to pre-judgment interest computed

annually, using the average of the prime rate of interest of Bank of America from September 18, 1998."). This is not dispositive, but it shows that at least one bankruptcy court has determined that the Seventh Circuit's general rule regarding prejudgment interest—the rule whose reasoning the *Forman* court adopted—is applicable to preference actions.

8. The rates are the bank prime rates as reflected by the Federal Reserve Statistical Re-

**14**

on each anniversary. This results in a judgment owed as of April 15, 2005, of $142,272.61.[9] A judgment follows.

lease which refers to the bank prime rate as the "[r]ate posted by a majority of top 25 (by assets in domestic offices) insured U.S.-chartered commercial banks," and states "Prime is one of several base rates used by banks to price short-term business loans." The parties implicitly agree that it is appropriate to adjust the prime rate annually instead of from month to month, and that annual compounding is warranted in light of the short-term nature of prime rate loans.

9. Using the trustee's methodology, interest grows the amount owed as follows:

9/27/2002—9/26/2003:
$127,400.00 × 1.0475 = $133,451.50
9/27/2003—9/26/2004:
$133,451.50 × 1.0400 = $138,789.56
9/27/2004—4/15/2005:
$138,789.56 × (1 + [.045800
× 200 days/365 days] ) = $142,272.61.